UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

CARLTON BERKLEY as a Member of Local 2054 of
the American Federation of State, County and
Municipal Employees, as Acting President of Local
2054 of the American Federation of State, County and
Municipal Employees, and on Behalf of the Members
of Local 2054 of the American Federation of State,
County and Municipal Employees, LINDA BOWMAN,
as a Member of and As Vice President of Local 2054 of
the American Federation of State, County and
Municipal Employees, PATRICIA McDOUGAL, as a
Member of and Treasurer of Local 2054 of the
American Federation of State, County and Municipal
Employees, DEBRA SPRIVEY, as a Member of and as
Secretary of Local 2054 of the American Federation of
State, County and Municipal Employees, MARIA
RODRIGUEZ, as a Member of and Executive Board
Member of Local 2054 of the American Federation of
State, County and Municipal Employees, and
AURELIA HARRISON, as a Member of and asan
Executive Board Member of Local 2054 of the
American Federation of State, County and Municipal
Employees,

                        Plaintiffs,

           - against -

LILLIAN ROBERTS, individually,  DISTRICT
COUNCIL 37, AMERICAN FEDERATION OF
STATE, COUNTY, AND MUNICIPAL EMPLOYEES;
AMERICAN FEDERATION OF STATE, COUNTY
AND MUNICIPAL EMPLOYEES; GERALD
McENTEE, As President of the American Federation of
State, County and Municipal Employees; THOMAS
KULIKOSKY, individually; JOHN SEFARIAN;
COLEEN CAREW-ROGERS, and IRVINGS, ROTH
and RUBIN, PLLC,

                        Defendants.

                            x

**09-CV-7751**

**VERIFIED COMPLAINT**

**JURY DEMAND**

Plaintiffs, by their undersigned attorneys, as and for their Verified Complaint, allege as follows:

## INTRODUCTION

1.    This is an action seeking damages and injunctive relief flowing out of the financial mismanagement of a local public employees union, the failure of officials of the parent union and its subordinate body to prevent the mismanagement once they had reason to be aware of it, and the apparent decision of the parent union to place the local union under the control of an administrator only when the local union's executive board took action on its own to remedy the financial mismanagement

## JURISDICTION

2.    This Court's jurisdiction is invoked pursuant to 29 U.S.C. § 185. This Court's pendent jurisdiction is also invoked.

## PARTIES

3.    All plaintiffs are members of Local 2054 of the American Federation of State, County and Municipal Employees (hereinafter "Local 2054"), a union which represents approximately 5000 college assistants and other clerical employees of the City University of New York. Local 2054 is affiliated with the American federation of State, County and Municipal Employees (hereinafter "AFSCME") and is a constituent of AFSCME's administrative subdivision, District Council 37 (hereinafter "DC 37."), which coordinates collective bargaining for 56 local unions made up of employees of the City of New York, City University of New York , the NYC Housing Authority, and the NYC Transit Authority. Local 2054 has its offices at 125 Barclay Street, New York, New York 10007. Local 2054 is governed by its Constitution  (annexed as Exhibit A) and by the

Constitution of AFSCME, the relevant provisions of which are annexed as Exhibit B.

4.    Plaintiff Carlton Berkley was appointed Acting President of Local 2054 on September 1, 2009. Plaintiff Linda Bowman is the Vice President of Local 2054 and has held that position since October 2008; before that she was the Treasurer. Plaintiff Patricia McDougal has been the Treasurer of Local 2054 since October 2008. Plaintiff Debra Sprivey is the Secretary of Local 2054. is the Treasurer of Local 2054. Plaintiffs Maria Rodriguez and Aurelia Harrison are members of the Executive Board of Local 2054. Each sues as a member of Local 2054 and in their official capacity. Plaintiff Berkley also sues on behalf of the members of Local 2054.

5.    Defendant Lillian Roberts at all relevant times was the Executive Director of DC37. Her business address is 125 Barclay Street, New York, N.Y. She is sues individually for breach of fiduciary duty.

6.    Defendant DC 37 is a regional division of AFSCME, governed by its own constitution and the AFSCME Constitution, which services its constituent locals, coordinates collective bargaining, and provides legal oversight.

7.    Defendant AFSCME is a an "International" labor union which represents public sector and quasi-public sector employees in the United States and Puerto Rico, as well as employees of non-profit organizations and charities. It has its principal offices located at 1625 L Street, NW, Washington, DC 20036. It is governed in its operations by its Constitution. Gerald McEntee, at all relevant times has been President of AFSCME and is sues in his official capacity only.

8.    Defendant Thomas Kolikosky is the Assistant Director of Auditing for AFSCME. His business address is 1625 L Steet, NEW, Washington, DC 20036. He is sued individually for breach of fiduciary duty.

9.    Defendant John Sefarian is the Chair of the Judicial Panel for AFSCME. His business address is

1625 L Street, Washington, DC. He is sued individually for breach of fiduciary duty.

10.    Defendant Collen Carew-Rogers was President of Local 2054 at all relevant times. Her home address is 4211 Avenue K, Brooklyn, NY 11210.

11.    Defendant Irvings, Roth and Rubins, is an auditing firm organized as a NY State Professional Limited Liability Corporation. It's principal place of business is 307 Fifth Avenue, New York, NY 10016.

## FACTS RELEVANT TO
## ALL CLAIMS

12.    For the 25 years prior to 2007 the President fo Local 2054 was Joan Reed. Throughout that entire 25 year period Reed never faced a contested election,rarely held membership meetings (certainly never one that a quorum was at) and basically told her Local Executive Board how the union was going to be run.

13.    Pursuant to the Local 2054 Constitution the local is required to have three membership meetings per year (with a quorum being 10% of the membership)(see Article VI Sections 1 and 4), and the Executive Board is to be the governing body except when a membership meeting is in session, and is responsible for authorizing all financial expenditures (Article VII Section 6).

14.    At the end of February 2007 Joan Reed retired and Carew-Rogers became President of Local 2054. Without approval of the Local 2054 Executive Board Ms. Reed ordered a $41,715 car for herself as a retirement gift (see Exhibit C), and Rogers executed a check drawn on the local's account as payment on March 5, 2007.

15.    In addition to Reed's gift, the outgoing Treasurer and Secretary were each given $5000 gifts following their retirements, without Executive Board approval.

16.    During all of 2007 the Local held only one membership meeting, in May, and the meeting did

not have a quorum.

17.    On October 18, 2008, acting on advice from Joe Manfre, a member of defendant Irvings, Roth
       and Rubins, which had been retained to do an audit of the union's 2007 books, the Executive
       Board retroactively approved an amendment to their February 2007 minutes approving the
       purchase of the car. The amendment as drafted by Manfre is annexed as Exhibit D and the
       revised minues are annexed as Exhibit E, and the minutes reflecting the decision to make the
       revision is annexed as Exhibit F. Manfre at no time advised the Executive Board that such a
       retroactive approval was unlawful.

18.    Manfre also found that the local had little or no supporting documentation for goods and services
       it purchased after Rogers became President, and that a number of financial transactions were not
       noted in the Executive Board minutes as having been approved. Rather than alert the Executive
       Board to this fact, Manfre had Carew-Rogers execute a general exculpatory letter to him,
       annexed as Exhibit G, which falsely stated that all expenditures had been approved by the
       Executive Board.

19.    Local 2054, at the commencement of Carew-Rogers' term, had assets of Approximately $1.8
       million. Although the AFSCME Financial Code requires locals to place their money in safe
       instruments, Local 2054's treasury was almost entirely invested in a Smith Barney investment
       account. Between December 31, 2007 and February 27, 2009 the balance of that account was
       reduced to $743,418. According to the October 2008 minutes of the Executive Board meeting
       (Exhibit F), "Our auditor said we lost money in the market." Auditor Manfre, apparently, did not
       advise the Executive Board that its investment violated the AFSCME Code, and that such an
       investment was imprudent. As a result that Local kept its money in the investment account and
       suffered additional losses beyond those which it had suffered prior to October 2008. (The

financial statement for September 2008, part of Exhibit F indicates that the investment account then had a value of $1,160,719.)

20.    In December 2008, without Board approval Carew-Rogers purchased tickets to the Christmas show at Radio City Music Hall, and brought 12 family members.  She gave a $300 check to Board Member Elba-Amadiz, upon the passing of her mother, without Board approval. During 2008, without Board approval, Carew-Rogers published a calendar for the members, distributed bacj sack bags, and bought a microwave oven withoutBoard approval.

21.    During 2008 Local 2054 did not have a single membership meeting.

22.    After taking office Carew-Rogers hired an accountant named Wifred Lee to prepare the Local's monthly financial reports.  During most months Lee supplied no reports, on occasion he would supply three months of reports at once (see for example Exhibit F). Despite complaints from the Board Carew-Rogers refused to hire another accountant.

23.    The report from the auditor (Manfre) caused great unease among the Local 2054 Executive Board. Linda Bowman requested to move from the Treasurer position into the vacant Vice President position, and the Board, which was unaware of its power to approve expenditures, began to question Carew-Rogers actions, and began to complain about them to officials at DC 37.

24.    On February 9, 2009, plaintiff Spivey sent a copy of an e-mail addressed to Plaintiff Bowman to DC37 White Collar Division head Mike Riggio,  complaining that Carew-Rogers frequently acted without Board approval (see Exhibit H).

25.    On February 20, 2009 plaintiff Spivey wrote to Defendant Carew-Rogers requesting a meeting, complaining that Carew-Rogers was not allowing her to do her job, and was not allowing the Board to function. (See Exhibit I)

26.   On February 25, 2009 Carew-Rogers terminated Plaintiff Bowman's job as union-designated Grievance Rep, a position which had allowed her to work full time for the union while on the CUNY payroll, and appointed someone else to the position over the objection of the Board. See Exhibit J.

27.   Shortly after Bowman's termination the Plaintiffs met with defendant Roberts and outlined all of the problems in the governance of their local described above.

28.   In March 2009 the Executive Board voted not to fund what had been an annual event called the Spring Bash, which cost the local around $15,000. (See minutes annexed as Exhibit K.) Carew-Rogers, rather than following the Executive Board's suggestion and holding a membership meeting to discuss alternative member events, sent out a ballot (Exhibit L) to some list of union memebrs asking them to vote about whether to hold the Spring Bash. According to Carew-Rogers 139 members voted (out of 5000) and favored continuing the Spring Bash by a vote of 88 – 51, so she went ahead with the event and spent approximately $14,653 on it. Even a vote at a membership meeting with less that 500 members present (a quorum) would not have invalidated the Executive Board vote.

29.   On April 27, 2009 Plaintiff Bowman wrote to defendant Roberts about what had occurred with the Spring Bash (see Exhibit M) and requested a meeting. Roberts met with plaintiffs shortly thereafter.

30.   In May 2009, without approval of the Executive Board Defendant Carew-Rogers published and mailed out a newsletter, a copy of which is annexed as Exhibit N.

31.   Additionally, during May 2009, without Board approval, Defendant Carew-Rogers paid $1640 in order to send Maria Urena-Zayas to an AFSCME Leadership Conference. in Washington, DC. On June 10, 2009 plaintiffs wrote to Defendant Carew-Rogers and demanded that the money be

returned. (see Exhibit O).

32.     During the late winter and Spring of 2009 AFSCME began a financial audit of Local 2054. On

several occasions plaintiffs Bowman and McDougal spoke with an AFSCME auditor named Tom

Conte who advised them that the Local 2054 books had a lot of 'red flags." Unbeknown to

Plaintiffs AFSCME auditor, and defendant, Thomas Kulikosky issued a draft report to Carew-

Rogers (Exhibit P)in which he noted a number of major deficiencies:

                a) Improper documentation of credit card expenditures;

                b) Improper investment of union assets;

                c) A $281,115 operating deficit in 2007

                d) The failure to have an annual budget;

                e) Untimely financial reports to the Board;

                f) Untimely International financial reports (the local was 9 months behind)

                g) Under collection of dues.

        33.     In addition, the Local's May financial report (Exhibit Q) showed that the Local
paid more in per capita tax (dues) to DC37 and AFSCME than it collected from it members.

        34.     On around June 1, 2009 plaintiffs filed charges (Exhibit R) against Defendant
Carew-Rogers because of her expenditures on the Spring Bash, her issuance of the newletter and
her payment to Urena-Zayas, and compalined about many other actions by Carew-Rogers,
describing her treatment of the Local as a sovereign empire.

        35.     The charges were heard by AFSCME's most senior judicial authority, Judicial
Panel Chair Defendant John Sefarian. In his August 17, 2009 decision (Exhibit R), Sefarian,
while calling the use of a mail ballot on a union expenditure "dubious," cleared Carew-Rogers

of the charges arising out of the Spring Bash. He did find her guilty of making the payment to Urena-Zayas and publishing the newsletter without Board consent, but, contrary to his decision in an earlier case involving Roy Commer, the former President of AFSCME Local 375, Sefarian did not order Carew-Rogers to repay the local. Instead he gave her a reprimand.

36.    On September 1, 2009, the Plaintiffs, pursuant to Article IX Section 48 of the AFSCME Constitution suspended Carew-Rogers from office. See letter of charges annexed as Exhibit S. That same day the Board appointed Plaintiff Berkley, a retired police officer now working security at John Jay College, to be Acting President, retained counsel, voted to mail the charges against Carew-Rogers to the membership, and set a schedule for a mail ballot officer election later this year. See resolution adopted as Exhibit T(In 2006 only 13 members voted in the local's election; nominations and election were held on the same night in late December and all positions were uncontested.)

37.    The attorney hired by the Plaintiffs has been involved in litigation with AFSCME in the past involving dissident union members, and while representing around 10 DC37 locals, has been counsel to those politically opposed to Defendant Roberts. Amember of that firm wrote to defendant McEntee on September 2, 2009 advising him of the suspension. See Exhibit U.

38.    Throughout September 2, 3 and 4 Defendant Roberts refused to cooperate with the Board's suspension of Care-Rogers, refusing to give Plaintiffs Berkley and Bowman the key to her desk, or to take her off of release time. During the afternoon of September 4, 2009, Plaintiff Bowman received a call from an AFSCME official advising her that he had been appointed as Administrator of the Local by Defendant McEntee, and that the Board was to meet with him at 6pm on September 8, 2009. he advised Plaintiff Bowman that the Board could not have its counsel present.

39.    The placement of Local 2054 into the control of an administrator, and the suspension of its Board is a wholly bad-faith act.  AFSCME has known of the financial deficiencies in Local 2054 for a long time and has taken no actions.  Financial reports were late for many years, and the AFSCME auditors went through the Local's records in early 2009. Although those records should have alarme dthem they didn't take any action other than isssue a series of draft recommendations which they didn't even communicate to the Executive Board. When AFSCME's top judicial officer had before him, in July, evidence of repeated failures to observe the Local's constitutional procedure with respect to expenditures he let Carew-Rogers off with a reprimand.

40.    What motivated AFSCME to act was the association of plaintiffs with opponents of Defendant Roberts, who has a close relationship with Defendant McEntee. The viotes which Local 2054 will cast in DC37's January 2010 Executive Board election could tip the balance of power in DC37; the administratorship places the ability of the local to vote in jeopardy.

41.    Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1-40 hereinabove in the Causes of Action set forth below.

### AS AND FOR A FIRST CAUSE OF ACTION

42.    By acting as aforedescribed defendants Roberts, AFSCME, Carew-Rogers, Kolakosky, Sefarian and Irvings, Roth & Rubin , each of whom owed fiduciary responsibilty to the Local have breached that fiduciary responsibility.

### AS AND FOR A SECOND CAUSE OF ACTION

43.    By acting as aforedescibed AFSCME has acted in bad faith, and therefore in violation of its Constitution.

## IRREPARABLE INJURY

44.     Should this Court fail to grant the injunctive relief requested by plaintiffs, plaintiffs and the members of Local 2054 will suffer immediate and irreparable injury in that they will be denied their right to self governance, to an election in December 2009, and to the opportunity to cast delegate votes in the January 2010 election of DC37.

45.     Plaintiffs have made no other request for the relief requested herein of this or any other court.

46.     Any further attempt to exhaust internal union remedies pre-election would be futile.

47.     Plaintiffs demand a jury trial.

## PRAYER FOR RELIEF

WHEREFORE plaintiffs pray that the Court

1.     Enter a temporary restraining order, preliminary injunction pursuant to Rule 65 of the Federal Rules of Court Procedure and permanent injunction enjoining and restraining defendants McEntee and AFSCME, their agents and employees, pending trial of this matter, from

a.     imposing an administratorship over Local 2054;

b.     suspending the Executive Board of Local 2054;

c.     failing to conduct an election in December 2009 for delegates who will be eligible to vote in the DC37 election;

d.     prohibiting the Executive Board of Local 2054 from retaining counsel at the Local's expense

2     Issue an order appointing a monitor to supervise the correction of Local 2054's deficiencies and to make appropriate reports to the court.

3.      Enter judgment against defendants, jointly and severally, for the losses sustained

by Local 2054, payable to Local 2054 and for punitive damages;

4.      Award counsel fees, costs and whatever other relief is just and equitable.

Dated: September 7, 2009

SCHWARTZ, LICHTEN & BRIGHT, P.C.
Attorneys for Plaintiffs

By:

Arthur Z. Schwartz, Esq. (AS 2683)
275 Seventh Ave. Suite 1760
New York, New York 10003
(212) 228-6320
districtleader@msn.com

## **VERIFICATION**

_Linda Bowman,_ certifies, under penalty of perjury, that she is a plaintiff in the within action, that she has read the foregoing Complaint, and that it is true to her knowledge, information and belief.

Dated: September 8, 2009

# EXHIBIT A

# International
# Constitution

# AFSCME
In the 21st century

Case 1:09-cv-07751-CBD   Document 1   Filed 09/25/09   Page 16 of 98

Unions are under a solemn obligation: to represent members forcefully and effectively in negotiations with management and to conduct internal union affairs according to democratic standards.

Therefore, we the members of the American Federation of State, County and Municipal Employees, in convention assembled, adopt this Constitution and this

## Bill of Rights for Union Members

1. No person otherwise eligible for membership in this union shall be denied membership, on a basis of unqualified equality, because of race, creed, color, national origin, sex, age, sexual orientation, disability, or political belief.

2. Members shall suffer no impairment of freedom of speech concerning the operations of this union. Active discussion of union affairs shall be encouraged and protected within this organization.

3. Members shall have the right to conduct the internal affairs of the union free from employer domination.

4. Members shall have the right to fair and democratic elections, at all levels of the union. This includes due notice of nominations and elections, equal opportunity for competing candidates, and proper election procedures which shall be constitutionally specified.

5. Members shall have an equal right to run for and hold office, subject only to constitutionally specified qualifications, uniformly applied.

6. Members shall have the right to a full and clear accounting of all union funds at all levels. Such accounting shall include, but not be limited to, periodic reports to the membership by the appropriate fiscal officers and periodic audits by officers

elected for that purpose or by independent auditors not otherwise connected with the union.

7. Members shall have the right to full participation, through discussion and vote, in the decision-making processes of the union, and to pertinent information needed for the exercise of this right. This right shall specifically include decisions concerning the acceptance or rejection of collective bargaining contracts, memoranda of understanding, or any other agreements affecting their wages, hours, or other terms and conditions of employment. All members shall have an equal right to vote and each vote cast shall be of equal weight.

8. Charges against a member or officer shall be specific and shall be only on grounds provided in this Constitution. Accused members or officers shall have the right to a fair trial with strict adherence to due process. The accused shall be considered innocent until proven guilty.

## ARTICLE I

### Name, Affiliation, and Headquarters

**Section 1.** This International Union shall be known as the American Federation of State, County and Municipal Employees, and shall be affiliated with the American Federation of Labor and Congress of Industrial Organizations.

**Section 2.** The headquarters of this International Union shall be in the Washington, D.C., metropolitan area.

and other properties shall be transmitted to the International Secretary-Treasurer and assigned to the International Union. If such subordinate body is reorganized within a period of two years following transmission of its assets to the International Secretary-Treasurer, then an amount of funds equal to the value of such assets shall be provided to such reorganized body by the International Union. No property of any subordinate body and no property in the possession, custody or control of any such subordinate body or any of its officers or employees, and no property held in trust, express or implied, which was created or established by any such subordinate body and whose primary purpose is to provide benefits for the members of such subordinate body or their beneficiaries, shall be given, contributed, assigned, donated or result to, or be given to the control of, either directly or indirectly, any seceding, dual or antagonistic labor organization or group or to any subordinate body which is in violation of the International Constitution, but any such property shall remain in the custody or control of the subordinate body as indicated above, regardless of whether a majority of the membership may have seceded or disaffiliated.

**Section 36.** If the International President shall find (1) that a subordinate body has seceded or purported to secede, or (2) that dissolution or secession of a subordinate body is threatened, or (3) that dissipation or loss of the funds or assets of a subordinate body is threatened, or (4) that the subordinate body has deliberately filed false per capita tax or other financial or audit reports with the International Union, or (5) that a subordinate body is acting in violation of this Constitution or of any lawful order of the Convention, the International

Executive Board, or the International Preside, that in the opinion of the International Preside emergency situation exists, the Internat President is empowered to place such subordi body under administratorship pending notice hearing. The International President shall imr ately refer the matter to the Judicial Panel hearing in the manner hereinafter provided, s notify the subordinate body, and shall promj submit a written report to all members of International Executive Board notifying them such action and the reasons therefor.

**Section 37.** If the International President sh have reasonable cause to believe that a subordina body or the officers, employees, or members ther of are (1) engaged in financial malpractice or co ruption, or (2) violating the obligations of a colle tive bargaining agreement, or (3) acting in violatio of this Constitution or of any lawful order of th Convention, the International Executive Board, o the International President, or (4) threatening secession or dissolution, or (5) conducting the affairs of the subordinate body in such a manner as directly and seriously to jeopardize the fundamental rights and interests of the membership of the subordinate body or the International Union, or (6) conducting the affairs of the subordinate body in such a manner as to deprive members of the subordinate body of the rights guaranteed in the Bill of Rights for Union Members contained in this Constitution, or potential members of the right to become members of appropriate subordinate bodies, and that such conduct cannot or will not be immediately remedied by the subordinate body, the International President shall refer the matter to the Judicial Panel for hearing and/or investigation in

## ARTICLE IX

the manner hereinafter provided and shall notify the subordinate body.

**Section 38.** Immediately upon the International President's taking any action under Section 36 above, the Chairperson of the Judicial Panel shall appoint from among the members of the Panel an Administratorship Hearing Board. If the affected subordinate body is a local union, not more than three members shall be appointed. If the affected subordinate body is a council, three members shall be appointed. If the Administratorship Hearing Board consists of more than one member, the Chairperson of the Judicial Panel shall designate one of the members to serve as Chairperson. The Chairperson of the Administratorship Hearing Board shall be responsible for making all hearing arrangements and for giving adequate notice.

**Section 39.** A hearing shall be held before the Administratorship Hearing Board as soon as is consistent with due process, but with not less than seven days' notice, and not later than twenty-one days after the imposition of any administratorship pursuant to Section 36 herein. All interested parties shall be given a fair opportunity to present their views on the matter.

**Section 40.** The Administratorship Hearing Board shall as expeditiously as possible decide whether the subordinate body has committed any of the acts enumerated in Section 36 above.

**Section 41.** Should a majority of the Administratorship Hearing Board decide that the subordinate body has not committed any of the acts enumerated in Section 36, the appointment of the Administrator

shall be vacated and the International Presi shall not have power to appoint an administr over the subordinate body involved or to de the subordinate body expelled; provided, how that the International President may appeal s action to the International Executive Board. Sho a majority of the Administratorship Hearing Bc decide that the subordinate body has commit any of the acts enumerated in Section 36, International President shall take such action the President considers appropriate; provid however, that the subordinate body may app such action to the International Executive Board

**Section 42.** In case of an expulsion of a subor nate body, all funds, properties, books, and oth assets of the subordinate body or of t International Union in the possession of su expelled subordinate body shall vest in tl International Union and shall be delivered to a du authorized representative of the International Union.

**Section 43.** When the International Presider refers a matter to the Judicial Panel for hearin and/or investigation under the provisions of Sectioi 37 above, the Chairperson of the Judicial Pane shall appoint an Investigating Committee in the same manner as is provided for the appointment of an Administratorship Hearing Board. If the Investigating Committee determines to hold a hearing, or any directly interested party requests a hearing, the Investigating Committee shall hold a hearing within thirty days thereafter and with not less than seven days' notice to the subordinate body. The Investigating Committee shall use such other investigative procedures as it deems appropriate

Case 1:05-cv-07731-CGC   Document 1   Filed 9/08/09   Page 19 of 98

under the circumstances. The Investigating Committee shall, as expeditiously as possible, make a written report and recommendations to the International President. Should the Investigating Committee or a majority thereof recommend that the subordinate body be expelled or that an administratorship is appropriate, the International President may, if the President considers such action appropriate, expel the subordinate body or place the subordinate body in administratorship. The subordinate body may appeal such action to the International Executive Board. Should the Investigating Committee or a majority thereof fail to recommend that the subordinate body be expelled or that an administratorship is appropriate and should the International President nevertheless take either of such actions, the President shall immediately refer the matter to the Judicial Panel under the provisions of Section 36 above.

**Section 44.** In all cases where a subordinate body has been placed under administratorship, the International President shall assume charge of the affairs and business of such subordinate body and may appoint an administrator for such purpose. All actions of the administrator shall be subject to the direction, instructions and approval of the International President. Such administrator shall have the right, upon demand, to take possession of all the funds, properties, books and other assets of such subordinate body for the period that the administrator is in charge, such assets to be held in trust for the benefit of the subordinate body and to be expended only to the extent necessary for the proper conduct of the affairs of the subordinate body. The administrator shall institute all necessary action to recover money or other property of the

subordinate body. The administrator shall be adequately bonded to safeguard the subordinate body's assets and for the faithful performance of the administrator's duties. The administrator shall be authorized and empowered to suspend from office any or all the officers and appoint temporary officers, from among the members in good standing of such subordinate body, for the duration of the administratorship; to remove or replace representatives or other employees of such subordinate body; and to take such other actions as in the administrator's judgment are necessary for the preservation of the rights and interests of the members of the subordinate body and of the International Union. The administrator shall be empowered to conduct and manage the affairs of the subordinate body with the assistance of the officers or temporary officers herein provided for until the administratorship is terminated. The administrator shall submit complete monthly reports of the administrator's actions and of the affairs of the subordinate body to the International Executive Board and to the membership of the subordinate body under administratorship. Expenses of the administrator shall be paid out of the funds of the subordinate body if they are available; otherwise they shall be borne by the International Union. Such administratorship shall be continued no longer than is necessary to remove the causes of its establishment.. The subordinate body shall have the right to appeal to the International Executive Board for removal of the administratorship on the ground that such administratorship has been continued longer than is necessary; provided, that no such appeal may be made within six months after a prior decision by the International Executive Board.

## ARTICLE IX

**Section 45.** When an administratorship is to be terminated, the administrator shall conduct elections of officers of the subordinate body except for those elected officers whose terms shall not have expired and who have not been expelled, suspended or otherwise barred from office during the period of administratorship and shall install such officers on the day the administratorship is terminated. The administrator shall return all funds, books, property and other assets of the subordinate body to its appropriate officers who shall give appropriate receipt for same. The administrator shall make a final accounting of the administratorship and submit it to the International Executive Board and to the subordinate body.

**Section 46.** No financial obligation or liability of the subordinate body which may exist at the time the administratorship is instituted or which may have been incurred before that time shall be assumed by, or become an obligation of, the American Federation of State, County and Municipal Employees.

**Section 47.** Notwithstanding any other provision of this Constitution or of the constitution of any subordinate body, the executive board of any subordinate body shall have the authority to order the immediate suspension, pending full investigation, of officers or staff employees of such subordinate body who in its opinion are engaging in conduct imminently dangerous to the welfare of such subordinate body or of the International Union. Such action shall not affect the membership rights of any officer or staff employee so suspended. In any such case, the executive board shall immediately notify the International President of its action and of the

reasons therefor. In any such situation, the order of the executive board shall be in effect for no more than thirty days, and may not be renewed unless formal charges have been filed against the officer or staff employee so suspended within the thirty-day period. Upon receipt of notice of the imposition of such a suspension, the International President shall immediately designate a representative to conduct an investigation. The findings of the investigation shall be reported to the International President not later than fifteen days after such representative was designated, and the International President shall determine whether the subordinate body executive board had a reasonable basis for imposing the suspension. If the International President finds that the subordinate body executive board lacked a reasonable basis for imposing the suspension, the International President shall order the immediate reinstatement of the suspended officer or employee. Notice of the International President's determination shall be sent to the suspended officer or staff employee and to the subordinate body executive board which imposed the suspension. Decisions of the International President pursuant to this Section shall not be subject to appeal. Such decisions shall not affect the processing of any charges which may be filed against the suspended officer or staff employee and shall not constitute a determination of the merits of such charges.

**Section 48.** The constitution of every subordinate body and any change of any nature in the constitution of any subordinate body shall conform to the provisions of the International Constitution including the provisions of the Bill of Rights. The adoption of a new constitution by any subordinate body and any change of any nature in the constitution

Case 1:09-cv-57731-CSS   Document 1   Filed 09/09/09   Page 21 of 98

of any subordinate body shall be subject to the approval of the International President, and shall become effective only upon the granting of such approval by the President in writing. Regardless of such written approval, if a conflict between such subordinate body constitution or amended constitution and the International Constitution including the provisions of the Bill of Rights is found, the provisions of the International Constitution shall prevail. Unreasonable refusal or delay in granting approval by the International President shall be reviewable by the International Executive Board at the request of the subordinate body.

**Section 49.** The constitution of every subordinate body of the Federation shall contain a provision stating the following:

"Except to the extent specified in this constitution, no officer of the local union [or council or retired employee chapter or sub-chapter] shall have the power to act as agent for or otherwise bind the local union [or council or retired employee chapter or sub-chapter] in any way whatsoever. No member or group of members or other person or persons shall have the power to act on behalf of or otherwise bind the local union [or council or retired employee chapter or sub-chapter] except to the extent specifically authorized in writing by the president of the local union [or council or retired employee chapter or sub-chapter], or by the executive board of the local union [or council or retired employee chapter or sub-chapter]."

**Section 50.** All elections of officers and delegates in subordinate bodies shall be subject to the provisions of Appendix D of this Constitution.

**Section 51.** Each elected officer of each su dinate body shall, upon assuming office, subsc to the Obligation of an Officer contained Appendix B of this Constitution.

**Section 52.** This Constitution shall constitu contract between the American Federation of St. County and Municipal Employees and each of subordinate bodies individually. All subordin bodies shall at all times be subject to the provisio of the International Constitution.

## ARTICLE X

### Judicial Procedure

**Section 1.** Except as hereafter provided in th Article, any member of the Federation may fi charges against any individual for actions take while a member of the Federation or while a sta employee of the Federation or a subordinate body

**Section 2.** The following and no other shall cor stitute the basis for the filing of charges:

A. Violation of any provision of this Constitution or of any officially adopted and approved constitu tion of a subordinate body to which the member being accused is subject.

B. Misappropriation, embezzlement, or improper or illegal use of union funds.

C. Any action by any officer or employee of any council which results in the expenditure by said council of money which is the property of any other subordinate body or of the International Union without proper written authorization from the body which is the owner of such funds.

# EXHIBIT B

CONSTITUTION

FOR

LOCAL 2054

ARTICLE I
NAME

The name of this organization shall be New York City College
Assistants, Local 2054 of the American Federation of State, County
and Municipal Employees, AFL-CIO.

ARTICLE II
AFFILIATIONS

This local union shall be affiliated with the American
Federation of State, County and Municipal Employees, New York City
District Council Number 37, The New York City Central Labor Council
the State AFL-CIO, and the Municipal Labor Committee.

ARTICLE III
OBJECTIVES

The objectives of this local shall be to carry out on a local
basis the objectives of the American Federation of State, County
and Municipal Employees, and other policies which are in the
interest of the local.

ARTICLE IV
MEMBERSHIP AND DUES



Section 1.  All employees of the City University of New York i
the titles of College Assistant, Remedial Assistant and College Coun
employees of the City University of New York in non-competitive cler
administrative, non-competitive paraprofessional and related non-com
tative titles are e igible for membership in this local union, subje
to the requirements of the Constitution of the International Union.

Section 2.  Application and Checkoff:  Application for
membership shall be made on a standard application form which
includes an authorization for deduction of dues through the
checkoff system of the City of New York, or other fiscal authority.

Section 3.  Dues Rates:

(A)  The dues of this local shall be $6.61 for part-time
employees per biweekly pay period.

(B)  From these bi-weekly dues deductions, all per
capita taxes and other local expenses shall be
paid as required by the local, District Council
and International Constitutions.

(C)  When increases in per capita taxes are imposed by
exercise of Article III of the District Council
Constitution, the dues rate for this local shall
be automatically adjusted to compensate for the
increase in per capita and an amount equal to
such payment shall be deposited in the local
treasury.

(D)  Any other increases in dues shall require an
amendment of this constitution, as outlined in
Article XI except where the International Consti-
tution has jurisdiction through Article IX,
Section 6.

B

## ARTICLE V
### OFFICERS AND DUTIES

Section 1. Officers: The officers of this local union shall be a president, a vice-president, a treasurer, a secretary and three (3) executive board members who shall be elected at-large. These seven persons shall constitute the executive board of the local.

Section 2. Terms of Office: All officers and members of the board shall be elected for a term of three (3) years, beginning in 1982.

Section 3. There shall, with the approval of the executive board, be established in this local, chapters for specific titles or schools as may be necessary from time to time. The chairperson of these chapters shall be elected in the same manner as all other officers, except that only persons employed in these specific titles shall be eligible to vote in the election of the chapter chairperson.

Section 4. Oath of Office: Every officer shall, upon assuming office, subscribe to the oath of the Obligation of an Officer contained in Appendix B of the International Constitution.

Section 5. Stipends: Monthly stipends shall be paid to member of the executive board based on the following schedule:

President.........................Three and one quarter (3¼) times
                                   the annual dues rate

Vice-President....................Two (2) times the annual dues rate

Treasurer.........................Two (2) times the annual dues rate

Secretary.........................Two (2) times the annual dues rate

Executive Board Members.........One and one quarter (1¼) times
                                    the annual dues rate

Delegates shall receive a monthly stipend as set by the executive board.

## ARTICLE VI
### MEETINGS

Section 1. Regular Meetings. There shall be regular meetings of the general membership held at the call of the executive board, but no less than three (3) each year. The time and place of such meetings shall be fixed by the executive board.

Section 2. Special Meetings: Special meetings of the local may be called by the president, by a majority of the executive board or by a written petition filed with the board and signed by 10 percent of the membership. The purpose of the special meeting shall be clearly set forth on the petition and no business other than that which has been set forth may be conducted at such a special meeting.

Section 3. Other Meetings: The president or the executive board may authorize meetings for chapters or shop stewards as the needs arise.

Section 4. Quorum.

    (A) A quorum of 10 percent of the members shall be required to conduct business at a regular or special meeting of the membership.

    (B) A majority of the members of the executive board shall be required for a quorum, to conduct business at all meetings of the board.

ARTICLE VII
DUTIES OF OFFICERS AND EXECUTIVE BOARD MEMBERS

Section 1.  The president.  The President shall preside at all meetings of the local union and of the executive board.  He/she shall be a member of all committees, and he/she shall be a delegate to all conferences and conventions.  He/she shall countersign all checks drawn against the funds of the local, except as otherwise designated in the constitution.  He/she shall appoint committees of the local subject to the approval of the local executive board.  He/she shall report periodically to the membership, regarding the progress and standing of the local and regarding his/her official acts.  He/she shall appoint all committee chairpersons and the chief shop steward with the approval of the executive board.

Section 2.  The Vice-President.  The vice-president shall assist the president in the work of his/her office.  In the absence of the president or in his/her inability to carry out his/her duties, the vice-president shall preside at all meetings and perform all duties otherwise performed by the president.  He/she may, with the approval of the executive board, be authorized to act as co-signer of checks drawn on local funds in place of either the president or the treasurer.

Section 3.  The Treasurer.  The treasurer shall see that all monies of the local union are received and properly receipted.  He/she shall see that monies so received in the name of the local union are deposited in a bank or banks selected by the executive board.  Monies so deposited shall be withdrawn or disbursed by checks signed by the president and treasurer or other authorized officer.  He/she shall see that all checks drawn for such purposes as are required by the constitution or are authorized by the membership or the executive board of the local shall be prepared, signed, and countersigned.  He/she shall keep or cause to be kept an accurate record of receipts and disbursements and shall, once each month, submit to the local or the executive board, a monthly operating statement of the financial transactions of the local.  He/she shall act as custodian of all funds of the local union.  He/she shall, at the expense of the local union and through the International Union, give a surety bond for an amount to be fixed by the executive board of the local or the International Union.  He/she shall see that any financial reports required by the International Union, including independent audits, are submitted in accordance with the International Union Constitution.

Section 4.  The secretary.  The Secretary shall keep a record of the proceedings of all meetings of the membership and the executive board.  He/she shall carry on the official correspondence of the local except as otherwise directed by the executive board.  He/she shall perform such other duties as the executive board may require.  He/she may, with the approval of the executive board, be authorized to act as the co-signer of checks drawn on local funds in place of either the president or the treasurer.

Section 5.  The Executive Board Members.  The executive board members shall assist generally in carrying out the official business of the local.  In addition, executive board members may be assigned specific areas of responsibility and authority by the president with the approval of the executive board.  Such areas of responsibility include but are not limited to Publications, Political Action and Legislation, Safety and Occupational Health, Communications (both internal and external) and responsibilities in the processing of grievances and items pertaining to the good and welfare of the members of this local union.

Section 6. Duties of the Executive Board.

(A) The executive board shall be the governing body of the local union except when the local general membership is in session. All matters affecting the policies, aims and means of accomplishing the objectives of the local, not specifically provided for in this constitution or by action of the membership at a regular or special meeting, shall be decided by the executive board.

(B) Meetings of the Board: The executive board shall meet monthly except in the months of July and August or at the call of the president or a majority of the members of the board.] Questions of major policy must be voted on by the membership, except that when time does not permit referral to a regular or special meeting, the executive board may take action in the name of the local.

(C) Authority: The executive board must authorize all financial expenditures. Such authorization shall be recorded in the minutes and monthly financial reports prepared by the treasurer.

(D) Audit: The executive board shall be responsible for retaining a Certified Public Accountant to conduct an audit of local union finances at least annually.

Section 7. Attendance.

(A) Failure of an officer or executive board member to attend a minimum of three (3) consecutive board meetings and/or three (3) consecutive general membership meetings per year without being excused, shall cause his/her office to be immediately and automatically vacated. Board members whose positions are vacated in this manner forfeit entitlement to any stipend which is due payment.

(B) Vacancies: Vacancies created by the action of Section 6(A) shall be filled in accordance with the procedure set forth in Article VIII, Section 9 of this constitution.

ARTICLE VIII
NOMINATIONS AND ELECTIONS

Section 1. Notice of Nominations. Nominations for office shall be made at a regular or special meeting of the local. At least fifteen (15) days advance notice shall be given the membership of the meeting at which nominations are to take place. Nominations and elections may be held at the same meeting provided that the notice sent fifteen (15) days in advance clearly states the intention to hold both nominations and elections on the same date.

Section 2. Nominations from the Floor. A nominating committee may be appointed to make nominations but, whether or not such nominating committee functions, nominations shall be permitted from the floor at the nominations meeting.

Section 3. Schedule of Nominations and Elections. Nominations and elections shall take place in the month of December of the last year of the current term of office.

Section 4. Installation of Officers. Installation of officers will take place upon the acceptance of the report of the Election Committee at a meeting of the general membership.

Section 5. Eligibility for Office. To be eligible for offic in this local union, a candidate must be serving in a title represented by this local and must have been a member in good standing for a one (1) year period immediately preceding the month in which nominations are held.

Section 6. Election Committee.

(A) Prior to nominations, the president shall appoint an Election Committee and one member of the Committee to serve as its chairperson.

(B) Disqualification of Candidates: A member of the Election Committee who accepts a nomination for office, must relinquish his/her Committee post. The Committee will be responsible for ascertaining the eligibility of all candidates for office in this local.

(C) The Election Committee shall be responsible for the conduct of the election as well as any runoffs that may ensue.

(D) The Election Committee shall prepare a final report for the membership upon completion of the electoral process. Upon acceptance of the Committee's report by the membership, the Committee may be discharged by the president.

Section 7. Integrity of the Electoral Process. All elections in this local union shall be conducted by secret ballot vote and afford all eligible members a reasonable opportunity to participate (vote).

Section 8. Adherence to Elections Code. All matters concerning local union elections shall at all times be subject to the provisions of Appendix D (entitled "Elections Code") of the Internation Union Constitution, and the Elections Manual published by the International.

*** Section 9. Vacancies in Office. Vacancies in office shall be filled for the remainder of the unexpired term by majority vote of the local union executive board.

ARTICLE IX
SHOP STEWARDS

Section 1. Election of Shop Stewards. Shop stewards in this local shall be elected in conformity with the following procedure: (1) Authorized units may be established for these purposes at all colleges and each of these units may elect a shop steward or shop stewards. (2) Additional authorized units may be established by the executive board as new colleges are constructed, new services are introduced, or as needs may arise from time to time.

Section 2. Stipends. Shop stewards shall receive an annual stipend as set by the executive board.

*Section 3. Removal of Shop Stewards.

(A) New Election Ordered: The executive board may, upon investigation of complaints from members in any unit that a steward is not functioning or otherwise failing to properly represent the workers in his college or unit, order a new shop steward election in that college or unit.

-6-

(B) Temporary Shop Stewards: In cases of an emergency nature, where no steward is representing a college or unit, the executive board may appoint a temporary steward.

### ARTICLE X
### MISCELLANEOUS PROVISIONS

Section 1. International Constitution. This local constitution shall at all times be subject to the provisions of the Constitution of the American Federation of State, County and Municipal Employees.

Section 2. Authority to Act for Local. Except to the extent specified in this constitution, no officer of the local union shall have the power to act as agent for or otherwise bind the local union in any way whatsoever. No member or group of members or other person or persons shall have the power to act on behalf of or otherwise bind the local union except to the extent specifically authorized in writing by the president of the local union or by the local executive board.

Section 3. Parliamentary Procedure. Robert's Rules of Order, Revised, shall be the guide in all cases to which they are applicable and in which they are not inconsistent with this constitution and the special rules of this local union or the American Federation of State County and Municipal Employees.

### ARTICLE XI
### AMENDMENTS

This constitution may be amended, revised, or otherwise changed by a majority vote of the members voting on such proposed change and such change shall take effect only upon the written approval of the International President. Proposed amendments to this constitution must be read at a regular or special meeting of the local union, and read and voted on at a subsequent meeting of the local union, adequate and proper notice having been given to the membership prior to the date on which the vote is taken. A written copy of the proposed amendment shall be furnished to every eligible voter at the meeting at which the vote is taken.

APPROVED BY:

Gerald W. McEntee
International President

12/14/87
Date

# EXHIBIT C



# TT ENTERPRISES

77 Carnation Avenue, Floral Park, NY 11001

(516) 775-1020 • FAX (516) 775-7121

VEHICLE CASH PURCHASE AGREEMENT

THIS AGREEMENT IS NOT BINDING UNLESS SIGNED BY THE SELLER AND THE BUYER

BUYER _John H. Ree_  SALESMAN _____

STREET _166 25 Pull CV Bl 12E_   HOME PHONE ____   BUS PHONE ____

CITY _Beechhorst_   STATE _N.Y._   ZIP _11357_

## THE TRANSACTION

I ORDER AND AGREE TO PURCHASE FROM YOU, ON THE TERMS CONTAINED ON BOTH SIDES OF THIS AGREEMENT. THE FOLLOWING VEHICLE (READ OTHER SIDE)

### THE VEHICLE

YEAR _07_  ☒NEW ☐ USED ☐ DEMONSTATOR   MAKE _Cadillac_   MODEL _CTS_   SERIES _LUX_

TYPE _4 DR._   COLOR _Grey_   TOP —   TRIM _Bk._   V.I.N. _166 DP 5778 70159519_

TO BE DELIVERED ON OR ABOUT ____   MILEAGE ____   STOCK NO (IF RESERVED) ____

| THE PRICE | | | | | |
|---|---|---|---|---|---|
| **VEHICLE PRICE** ( • ) | $38296 | 56 | | | |
| **TRANSPORATION** (IF NOT INCLUDED IN VEHICLE PRICE) ( • ) | | | | | |
| **FACTORY INSTALLED EQUIPMENT** ( • ) | | | | | |
| | | | | | |
| | | | | | |
| | | | Dealer Installed Equipment and Services | | |
| | | | | | |
| | | | | **TOTAL** | $ |

_Colleen –_
_This is the receipt_
_for the car._
_I love it !_

### THE TRADE-IN

| | | | |
|---|---|---|---|
| | | *LESS TRADE-IN CREDIT (-) (BUYER SEE 1 and 6(b) ON BACK) | |
| ( IN MOUNT OWED | $ | **CASH PRICE** | 38296 56 |

### TAXES AND OTHER FEES

| | | | |
|---|---|---|---|
| SALES TAX | % ( • ) | 3707 | 34 |
| DEALER'S FEE FOR OBTAINING REGISTRATION AND/OR CERTIFICATE OF TITLE (FEE MAY NOT EXCEED FORTY FIVE DOLLARS) | ) | 45 | — |
| REGISTRATION FEE (ESTIMATE) | ( • ) | 144 | — |
| INSPECTION FEE | ( • ) | 10 | — |
| OTHER—ITEMIZE _TIRE FEE_ | ( • ) | 12 | 56 |
| TOTAL CASH PRICE DELIVERED | | $ 41715 | 40 |
| LESS CASH DEPOSIT SUBMITTED WITH ORDER | ( - ) | | |
| PLUS BALANCE OWING ON TRADE-IN | ( • ) | | |
| CASH DUE ON DELIVERY | | $ | |

"If this motor vehicle is classified as a used motor vehicle, TT Enterprise certifies that the entire vehicle is in condition and repair to render, under normal use, satisfactory and adequate service upon the public highway, at the time of delivery."

"The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale."

I have read the terms on the back of this agreement and have received a completed copy of this agreement.

BUYER'S SIGNATURE _____   DATE. ____

CO-BUYER'S SIGNATURE _____   DATE. ____

SELLER APPROVED BY _____ _Pres._   DATE. ____

C

**EXHIBIT D**

An Addendum to the minutes of ...............2007, with reference to the item, approval
of retirement gift for
Joan Reed, President of Local 2054.

*CADILLAC*

The Local 2054 Executive Board feels that the gift of the 2008 Chrysler CTS was an
appropriate retirement gift for our
President Joan H. Reed for the exemplary work she has done for this organization, for the
past 35 years. She has fought for and won Full Time Benefits for our members', she has
fought for and won the right to a Pension and Tax Deferred Annuity.

Because of Ms. Reed's hard work, we are one of, if not the only part-time employees
who receive full-time benefits, across the country. Local 2054 – DC 37 has come a long
way since its inception and receiving it's charter in 1970. Going from an organization of
a few hundred members with no benefits and very little pay to approximately 5,000
strong, and having a voice at negotiations at the Collective Bargaining table for
recognition as hard working employees and just not 'fill-ins'. As a result most of our
members once they are vested can retire and take their benefits with them.

# EXHIBIT E

## Executive Board Meeting Local 2054
### February 22, 2007

**Old Business:**  Reading of the minutes from Executive Board Meeting on January 22, 2007 at 6:10 pm, by Debra Spivey, Elba Pena Amadiz absent from Board Meeting. **Corrections on January 10, 2007 minutes: Micky Eberlien title as DC 37 Council Representative and Central Labor Council Rep. and the early arrival for delegates meeting should be 5:30 pm and how to accept a motion.** Joan Reed made a motion to accept the correction of the minutes.

| Motion to Accept: | Second |
|---|---|
| Aurelia Harrison | Patricia Brown |

The motion was made to accept the minutes as corrected. The motion passed.

**New Business:**

**Financial Report:**  **Treasures Report for January 2007 was read by Linda Bowman.   The treasures report for December 2006 was distributed to board members.  Joan Reed made a motion of accept the treasures report.**

| **Motion to Accept:** | **Second** |
|---|---|
| **Aurelia Harrison** | **Patricia Brown** |

**The Motion was passed on the treasures report.**

**New Business:**  **Joan Reed was reading the Constitution for vacancy rights to pass the President seat to Vice President Colleen Crew – Rogers as of March 1, 2007 for Local 2054.  Joan Reed made a motion to the Board Member of local 2054 to accept Colleen Crew Rogers for President.**

**Motion to accept**
Aurelia Harrison

**The motion effective as of March 1, 2007 was passed for Colleen Rogers, President of local 2054.**

**Colleen Rogers will be swarmed in as President of Local 2054**

**Colleen Rogers** made a motion to accept a Retirement Party for our beloved Joan Reed on March 18, 2007 at Russo on the Bay. The local 2054 Executive Board feels that he gift of the 2008 Cadillac CTS was an appropriate retirement gift for our President Joan H. Reed for the exemplary work she has done for this organization, for the past 35 years. She has fought for and won full time benefits for our members', she has fought for and won the right to a pension and tax deferred annuity.  Because of Ms. Reed's hard work, we are on of, if not the only part-time employees who



received full-time benefits, across the country. Local 2054-DC 37 has come a long way since its inception and receiving it's charter in 1970. Going from an organization of a few hundred members with no benefits and very little pay to approximately 5,000 strong, and having a voice at negotiations at the collective bargaining table for recognition as hard working employees and jut not 'fill-ins'. As a result most of our members once they are vested can retire and take their benefits with them.

**Motion to accept:**          **Second**
Linda                          Patricia

**The motion was passed for Joan Reed Retirement Party and Gift.**

**Joan Reed** will continue to participate in **Official Business for DC 37**. Joan Reed made a motion to accept paying for parking expenses for **Official Business for DC 37**.

**Motion to accept:**          **Second:**
Colleen Rogers                 Linda Bowmen

**The Motion was passed, authorization for Joan Reed Official Business Parking Permit.**

**Because of Joan Reed Retiring as President of Local 2054, her signature is void on signing checks. Therefore, Colleen Crew – Rogers President, Linda Bowman Treasure and Debra Spivey Secretary signed a signatory card, to authorize new check sign off.**

**Colleen Rogers** made a motion for approval to continue paying for the use of local **Cell Phone usage** and **EZ-Pass for Joan Reed.**

**Motion to accept:**
Aurelia Harrison

**The motion was passed for Joan Reed Cell Phone and EZ – Pass.**

**Linda Bowman was offered a position as Grievance Council for Local 2054.**

| | | |
|---|---|---|
| **Contributions:** | **White Collar Division Holiday Party** | **$274.47** |

**Committee of Concerned Social Workers Journal
Advertisement Form.**          **½ a page for**          **$300.00**

**Working Theater Performance at Riverside Church $20.00 for a group of 10.**          **$200.00**
**May 4ᵗʰ – 27ᵗʰ 2007**

**The Federation of African American Civil Service Organization, Inc. April 14, 2007, Table of 10 at $65.00 each. $650.00**

**Thank yous:** NONE

**Joan Reed made a motion to adjourn the Meeting.**
**The next Executive Board Meeting held on March 15, 2007.**
**Motion to adjourn the meeting at 6:55 pm. So moved.**

**Second: Pat Brown**
Sincerely,

Debra Spivey
Secretary



Local 2054
New York City College Assistants
Affiliated with District Council 37, American Federation of State, County & Municipal Employees, AFL-CIO
125 Barclay Street, New York, N.Y. 10007-2179 • (212) 815-1060

An Addendum to the minutes of $feb. 22.$,...2007, with reference to the item, approval
of retirement gift for
Joan Reed, President of Local 2054.

The Local 2054 Executive Board feels that the gift of the 2008 Cadillac CTS was an
appropriate retirement gift for our President Joan H. Reed for the exemplary work she has
done for this organization, for the past 35 years. She has fought for and won Full Time
Benefits for our members', she has fought for and won the right to a Pension and Tax
Deferred Annuity.

Because of Ms. Reed's hard work, we are one of, if not the only part-time employees
who receive full-time benefits, across the country. Local 2054 – DC 37 has come a long
way since its inception and receiving it's charter in 1970. Going from an organization of
a few hundred members with no benefits and very little pay to approximately 5,000
strong, and having a voice at negotiations at the Collective Bargaining table for
recognition as hard working employees and jut not 'fill-ins'. As a result most of our
members once they are vested can retire and take their benefits with them.

# EXHIBIT F

Executive Board Meeting Local 2054
On October 10, 2008,  6:35 pm

**Old Business:**   Reading the minutes from Executive Board on September 18, 2008, corrections on Joe Manfred is the Auditor. Present 10/10/08: Debra, Elba, Linda, Aurelia, Mickey and Colleen, Pat was absent and excused. Colleen made a motion to accept the minutes and correction. (09/18/08)

Seeing none, all in favor? Say I.

Motion on the minutes and correction, was accepted and passed.

**Treasurers Report**   In absence of Pat, Linda will Read the Tres. Report for the Months of June, July, August and September 2008. Colleen made a motion to accept the Tres. Report

Motion to accept                        second
Aurelia                                 Elba

Motion on the Tres. Report was accepted and passed.

**New Business:**   <u>October 10, 2008 Minutes</u>:

Addendum was given by Pres. Rogers to the Secretary to add to the minutes for Feb. 22, 2007 for Joan Reed Retirement gift.

(1) Our Auditor said we lost money in the market. Bob ~~Spencer~~ *Spina* our investor will counsel the local on our investments.   (not in the red)

(2) Debbie asked a question, because of the contract increase, should the executive board members stipends increase? Colleen will speck to the accountant Wilfred will make the adjustment. The raise was active as of 11/06/08.

(3) At this meeting we are only proposing a Revision on 2054 Constitution (Proposal) a copy of the constitution and  the revision copy was given to each Exc. Board member, to propose change only to:

   a. <u>Title</u>: Article IV Section 1: to read: All employees of the City University of New York in the titles of College Assistants, Disability Accommodation Specialists and Sign Language Interpreters are eligible for membership in this local union, subject to the requirements of the Constitution of International Union.

   b. <u>Dues</u>: Section 3 (a) of Article IV:  Leave as a QUESTION: the union dues should be $12.75 instead on $15.00, the dues will be raised  next year by 65 cents and the following year according to Alvin maybe more. Colleen is proposing not to exceed any more than $2.00 increase.

   c. <u>Include Vice President</u>: Article VI Section 3: to include the Vice President: should read: The President or Vice President will hold on-site lunch –time meetings with members on a monthly basis.  The President or Vice President or the Executive Board may authorize meeting for shop stewards as the need arises.

   d. Article VII section 3: legal Consult (do not touch)

     IT'S A PROCESS BEFORE CHANGE ON THE 2054 CONSTITUTION
          GETS APPROVED (Legal, AFSME)

**Contribution:**    none

**Events:**    none

Colleen made a motion to accept: old business, new business, contributions, Tres. Reports and Revision on 2054 Constitution (Proposal)

**Motion to Accept**             **Second**
**Linda**                     **Aurelia**

Motion to accept, old business, new business, Tres. Reports, Revision for 2054 Constitution (Proposal) was accepted and passed.

Colleen made a motion to adjourned the meeting at 8:15 pm, the next Board Meeting 11/13/08 at 6:00 pm so moved.

Debra Spivey        **Local 2054 Secretary**

LOCAL 2054 AFSCME

**Statement of Revenue and Expenses**
**For the Months of June, July, August & September 2008.**

REVENUE:

| | |
|---|---:|
| Gross dues-Dues checkoff | $ 625,703 |
| Less: Per capita allocations: | |
| District Council 37 | 384,083 |
| AFSCME International | 198,941 |
| Help Our Own Fund | 5,750 |
| Municipal Labor Committee | 1,080 |
| Admin. Check-off charges | 797 |
| Total deductions | 590,651 |
| | |
| Net dues | 35,052 |
| Interest and Dividends | 27,229 |
| Other receipts | 2,226 |
| TOTAL REVENUE | 62,281 |

EXPENSES:

| | |
|---|---:|
| Executive board stipends | 20,262 |
| Meetings | 1,439 |
| Contributions, participations and journal advertisements | 11,355 |
| Payroll taxes | 1,481 |
| Travel, and parking | 6,028 |
| Conferences and conventions | 8,291 |
| Telecommunications | 1,899 |
| Postage, printing and office | 697 |
| Bank charges and penalties | 58 |
| Scholarships | 3,000 |
| Flowers, gifts and condolences | 1,279 |
| Dues refunds | 1,525 |
| Retirees dues | 180 |
| Payroll costs | 1,151 |
| Affiliation dues | 2,237 |
| Surety bond | 1,509 |
| Accounting | 4,000 |
| | 66,391 |
| | |
| Excess of expenses over revenue | $ (4,110) |

**ASSETS**

| | |
|---|---:|
| BANK BALANCES : | |
| Checking account | $ 10,150 |
| Savings (Political Action A\C) | 693 |
| INVESTMENTS (Market value) | 1,160,719 |
| OFFICE FURNITURE AND EQUIPMENT | 3,117 |
| | |
| TOTAL ASSETS & UNRESTRICTED NET ASSETS. | $ 1,174,679 |

# LOCAL 2054
## EXECUTIVE BOARD MEETING
### Friday 10, 2008
### 5:30 pm

## Agenda:

1. Call to Order
2. Secretary will read the minutes
3. Treasurer's Report
4. Council Representative Report
5. President's Report
6. Revising of the Constitution
7. Adjournment

**EXHIBIT G**

Local 2054, AFSCME, AFL-CIO

September _____, 2008

Mr. Joseph Manfré, CPA
Irvings Roth & Rubin PLLC
307 Fifth Avenue
New York, NY 10016

Re: Representation Regarding Missing Information – 2007 Year End Audit

Dear Mr. Manfré:

As part of your audit of the financial statements of Local 2054 AFSCME, AFL-CIO (the Local) as of and for the year ended December 31, 2007, you noted that in a few circumstances, certain documentation and /or approval signatures from authorized personnel were missing.

Please be advised that to the best of my knowledge, all supporting documentation was obtained at the time of a purchase of any commodities or services and that such items were only for business relate matters of the Local. It is highly likely that the documentation was misplaced. Regarding missing signatures from authorized Local personnel, it is our policy that all items purchased by the Local are approved by the Executive Board and/or authorized personnel of the Local and that every request for payment by the vendor of previously approved purchases is reviewed and signed off by authorized Local personnel. The fact that there are a few, isolated instances where approvals are not noted are clearly because of an oversight and nothing else. I have reviewed the few exceptions you sighted and can assure you that they were all orally approved, business expenditures of the Local.

Sincerely,

_____
Colleen Carew-Rogers
President

G

# EXHIBIT H



Linda Bowman <linbow43@gmail.com>

# asking for Colleen Resignation

message

**Jebra Spivey <dspivey@jjay.cuny.edu>**                               Mon, Feb 9, 2009 at 7:41 PM
`o: "linbow43@gmail.com" <linbow43@gmail.com>`
`:c: "mriggio@dc37.net" <mriggio@dc37.net>`

Hi Linda, I am disturbed by Colleen Rogers behavior as President of local 2054

(1) Colleen Rogers refuse to listen to the executive board member ideas and concerns, the board will agree and Colleen will disagree and make the final decision. Colleen announced the first day of her term as President, "I will do things my way", all discussion, functions etc. was decided without the board approval. As a Board member I know this was not right. I felt there was nothing we can do about her behavior.

(2) John Jay College members have been asking for Pres. Rogers to appear at the College to hear their concerns. I have mentioned this to her often, "Colleen please come to John Jay College the members need you. The only reason Colleen is appearing on 2/19/09 because of the Executive Board Training in PA. I was so embarrassed, ashamed and humiliated in front of DC37 and AFSUME. Because she refused to commit to the constitution for local 2054 to have general membership meeting with local members at least 3 times a year, a John Jay College Assistant lost his job. Colleen did not want Mikey Eberlien who is our Central Labor Council Rep. tried to explain to Colleen that we had a case against John Jay College for Kevin Lewis. Colleen encouraged him to resign. We didn't know the constitution at that time to vote on a Grievance for him. Colleen still refuses to knowledge Mikey as a representative for local 2054. Myself, Pat Brown, Aruelia and Linda had to convince Mikey not to leave our local.

(3) Colleen voted against her own Board member Linda Bowman, whom served as our Grievance Rep. I felt that Linda was an excellent candidate for the VP position, for members for local 2054, instead Colleen wanted to elect an non member who is shops ward who made her own business cards instead of someone who represents the members no matter how long they are employed, Colleen had a problem listing, representing members with short employment time. Colleen doesn't care about us or the members, she is only concern about the money. I refuse to give any members Colleen direct number for complaints against them. Her unfair practice has made the board members Physically ill. I tried to reach out for advise from anyone who will help us. The executive board had a meeting to resolve the issues. It was the worst meeting ever as grown woman, yelling etc. and all from Colleen. Colleen mentioned to the board in confidentiality between Aruelia Harrison and Colleen at the meeting Aruelia was so embarrassed. Colleen tries to divided the board members against each other. Colleen continues to fight the executive board on elections, we feel at every election we should ask for an observer. We did it for the VP position and Treasurer. Position. Colleen also refuses to have Pat Brown our new Treasurer as of 09/24/08 special election. sign off for signature at the bank, we have not travel to the bank for signatures as of this day. The board continues to ask Colleen about this issue, we never get a answer. Colleen wanted to change the constitution for her benefit not for the 2054 members, she also stated that we are not changing Article VI Section 1. because incase we are questioned about having meeting at least three times a year, that we would not get in trouble by DC 37 if questioned, Colleen said "we will get around going out to meetings".

(4) Colleen continues to disrespect the board decisions, my position will expire in December 2009, I am tired of fighting with Colleen on issues she should be concern about. Our members are the main concern. I will not continue my position as Secretary, shop steward and Delegate for local as long as Colleen remains

President. Colleen always per pick members she thinks not the members on General Elections meeting to attend the AFSUME conventions. Colleen Crew-Rogers needs to resign from the position of President of local 2054. I do more for the members then she will every do in her entire life.

Debra Spivey
Secretary, local 2054

# EXHIBIT I

.

5/11/2009                          Gmail - URGENT Meeting with you. Pl...





Linda Bowman ‹linbow43@gmail.com›

# URGENT Meeting with you. Please

4 messages

**Debra Spivey <dspivey@jjay.cuny.edu>**                          Fri, Feb 20, 2009 at 2:28 PM
To: "lroberts@dc37.net" <lroberts@dc37.net>
Cc: "mriggio@dc37.net" <mriggio@dc37.net>, "linbow43@gmail.com" <linbow43@gmail.com>

Dear Lillian Roberts, I Debra Spivey Secretary of local 2054, shop steward and delegate, Patricia McDougald Treasure and Aurelia Harrison Board Member are requesting a meeting with you, our concerns are the local and members of 2054. We are asking what reason Linda Bowman was terminated from the local as Vice President without the board being present and to give Linda a chance to explain what is going on in our local. Mrs. Roberts, we have deep concerns about Colleen Rogers behavior, lies and unfair practice of the constitution of local 2054. Please response. Debra Spivey

The only reason I am writing you in regards to her computer is not working.

I Patricia Mcdougald am writing this in reference to the confusion that has been going on with our E.B. First of all our President Mrs. Colleen Crew-Rogers has not been fair to us, we as board members did not know our function, she would not explain anything to us. So we were their just to be their. We would ask her if she needed us to help her with anything she would say no I can do it but if we are your board members we should be able to help you. She would send us to function that she wanted us to go too she had already brought the tickets. The places that we wanted go to she would say that committee is unorganized and we do not need to go, or she would wait until the last minute and say that she can not get us a room. For instant the Black and Puerto Rican Caucus she knew about this in November she waited till the week of two to book us in the hotel now I guess they do not have anymore rooms so she book in some hotel that is 40 minutes away from everything so we have to keep taking cabs to et to the main hotel. If it was not for Linda we would not be at a lot of the AFSME Convention, but she gets angry with Linda when she follow through with things. which should not be because when the your V, she comes in the meeting, doesn't talk to her and now she is trying to get rid of her for what I would like to know? When we went to the EB training I felt like our table was in the middle of the floor the way people were looking at us. Colleen is upset cause now since we finally had a chance to read our constitution after she decided to give it us along with the Robert Rules. We now know our function as EB members and that is what's ticking her off. As long as we were in the dark everything was fine, now that we know our function as members it's a whole different ball game. Also I am the Treasure of the local Colleen refuse to let me do my job, she will not make it available for me to do any banking or pay bills, Colleen still has the VP doing signing the checks. It was said that Colleen do not trust me, I never gave her any reason not to trust me. This is only some of the things that we have as local 2054 board members are having problems with Colleen Rogers. I fell if we can not work together as a team, than Colleen needs to be relieved of her duties as President.

If you need to contact me. 212-237-8538 for cel# 646-258-6462. (Debra Spivey)

Thank you

# EXHIBIT J

File

**Executive Board Meeting Local 2054**
**On February 25, 2009   6:05 pm**

On February 25, 2009, Reading January 14, 2009 minutes, Present 2/25/09: Debra, Elba, Linda, Aurelia, Mickey, Colleen and Pat. Colleen made a motion to accept the minutes for 1/14/09.

| Motion to accept | second |
|---|---|
| Pat | Aurelia |

Hearing none, I, Motion on the minutes was accepted and passed.

**Treasurers**        No Treasurer Report

**Old Business:**        <u>February 25, 2009 Minutes:</u>

After reading the minutes for 1/14/09, Colleen called for an Executive Session meeting, Mickey was asked to be excused from the meeting. The board questioned Colleen's action, I asked for confirmation. Colleen called Lillian Roberts via phone to confirm Colleen's request and Mickey was excused.

<u>Special Session Meeting:</u>

Colleen explains to the board her action for removing Linda Bowman as Grievance Rep. the board asks Colleen what was the reason for removing Linda. Colleen explained Linda embarrassed her in front others, Linda keep asking her one day, what was wrong, and hearing from other DC37 member's gossip about our local. Hearing the reason, the board (Pat, Aurelia and I) was not pleased with Colleen reason for dismissal.  Linda began to defend herself against the accusation against her. After hearing both sides, the board (Pat, Aurelia, Linda and I) response to Colleen, we did not run to Lillian on issues about spending without the board approval. Colleen ask the board to give examples: Calendars, back sacks bags, Microwave, only selects events chosen by Colleen for the board to attend and donations.   The board (Pat. Linda and I) ask Colleen to reconsider her action because it's about the members not our personal feelings; Linda performs her duty as Grievance Rep. very well.   Colleen said she can't turn back now.  Aurelia began to laugh, Colleen ask what was so funny, the response from Aurelia is that whatever the President does, the board is also held responsible. The board was concern about going to jail because of Colleen not knowing how to run a board meeting. I ask Colleen why didn't she send in someone to show you how to run a meeting? Colleen said she will tell the auditor it was her fault.

## New Business

**Regular Meeting:**   Colleen passed out copies of the minutes for 11/13/08, Colleen was questioning
Number 8 on the minutes. I and Colleen agree to disagree with each on what was
said, however, an Amendment was attached to the 11/13/08 minutes. Colleen is
asking for two sign off lines added to the bottom of the page. (President and
Secretary to sign off)

Debbie asked Colleen, why our rooms were not paid for in Albany at the
Desmond Hotel and why our Gala tickets where not available?
Colleen and Linda discussed *the matter on the issue. Colleen explained to the board,
Linda was using the union credit* card to pay for the rooms and Colleen will purchase
the tickets, however, the issue was not resolved between Colleen and Linda. Colleen
said she will check the union credit card statement.

Aurelia talked about the Black and Puerto Rican Caucus held in the Albany.
Work shop was held in the Albany Room for CUNY. CUNY President's, Congress
members, Counsel Representatives and Senators where guest speakers, also the
Housing workshop: guest speaker Fay Moore from local 371, Administrative staff
from DC 37 and AFSCME Representatives showed their support. Aurelia informed
us about a dinner Banquet for DC 37 member, it was nice.

Pat made as motion to fill two vacant positions on the board. Sandra
Maysonet from BMCC and Maria Rodriguez from CSI (Staten Island College)
The board approved the candidates; the board will ask Maria and Sandra to decline
or accept the position.

President Rogers is requesting from the board to schedule a regular calendar
Date in the union paper, for the Executive Board Meeting each month.
(tabled)

The Board is requesting to attend CBTU in Atlanta Georgia. Colleen inform
The board members to bring information package for the next board meeting.
(Tabled)

**Donations:**   Local 372 Scholarship Committee for Atlantic City Bus Trip on 3/13/09, four
Tickets @ 30.00 each (Debbie) total: $120.00

Local 371 is asking for the Board to purchased a Journal page for $300.00 the
Board approved.

# EXHIBIT K

**Executive Board Meeting Local 2054**
**On March 17, 2009   6:00 pm**

On March 17, 2009, Reading February 25, 2009 minutes, Present 3/17/09: Debra, Elba, Aurelia, Colleen, and Keith. Pat and Linda were excused. Colleen made a motion to accept the minutes for 2/25/09.

| Motion to accept | second |
|---|---|
| Aurelia | Debbie |

Hearing none, l, Motion on the minutes was accepted and passed.

**Treasurers:**      No Treasurer Report

**Old Business:**     (1) Colleen gave the board a copy of the confirmation on tickets purchased for the Gala held in Albany. The board did not receive the tickets. Colleen tried calling them 3 times, however, no response, Colleen will write a letter to the Black and Puerto Rican committee concerning the tickets (attachment)

(2) Colleen purchased flowers for Pat McDougal husband, (Robert McDougald) passing. $140.84 (attachment)

(3) Colleen discussed the spring bash and gift. The board, Debbie and Aurelia was not pleased with Colleen decision on the spring bash and gift idea. Colleen showed the board a bag as the gift for the spring bash, according to Colleen, the spring bash is May 8th 2009. Colleen states other colleges and shop stewards are asking about the spring bash. I explained to Colleen what some members are feeling, because that's all we ever offered them is a spring bash that's all they know. I and Aurelia did not understand how Colleen made the decision on her own about having the bash. I and Aurelia felt the bag was a waste of money and The members are not interested in bags. The members want to enjoy with their family in June, July or August 2009: a picnic, trip or amusement park. The board voted against the spring bash. Colleen said it's up to the members to decide what they want. Colleen also said" she came on board with the spring bash. Aurelia said to Colleen, "why you always say that" Colleen wants to have the spring bash and picnic or amusement park. Debbie and Aurelia explained to Colleen, this issue was brought up before and was tabled, to the boards understanding, we were going to inform the members by mail, what is their choice? I and Aurelia explain to Colleen, we should have a general membership meeting, no buses to transport them to the meeting, have the scholarship awards and food if preferred, then announce to the members on their request, for something different other than the spring bash. Aurelia and myself explained to Colleen, this will save money, we only need one main costly event, that the members will enjoy with their family. Elba said we should have the bash this year and discuss next year planning. Colleen said the board have the right to vote on it, however, it's up to the members to make the final decision. The board voted again. The vote was 2 against 2. Once again, we have voted, discussed, debate and tabled the spring bash matter. we need the remaining board members to break the tie. Colleen said we can have a meeting before the next board meeting to resolve the spring bash issue. The board has 15 days to notify the members.  (Tabled)

K

## New Business:

Colleen introduce our <u>New Council Representative</u>: Keith Clarke

<u>Auditor Report</u>: Colleen Tabled the auditor report for next board meeting, all Board members must be Present to discuss this important issue.
Colleen mention the treasure workshop memo that was handed out in the meeting, for Pat and Debbie to attend, Colleen brought office supplies from staples, recommended by the Auditor: (one ream of paper was handed to Debbie) hold punch and folders etc was purchased. Colleen will call me tomorrow and give me the information and cost. Debbie explains to the new council rep. John Jay College might have a case for him.

Aurelia attend the PAC meeting, some very important information to report to the board about closing of Mary Immaculate and St. John's Queens Hospitals, Elba also explains the closing of hospitals. Also, as of March 12, 2009, the Health Care budget ha s not been finalized, Health and Hospital core is taken care of emergencies patients and private hospital are not taken emergencies patients. Aurelia gives the board information on Lobby day on 3/31/09 and DC 37 lobby Day on May 7th in Albany, PAC is asking for local 2054 to attend. Chuck Mohand from the Censes Burial is looking for volunteers and for anyone interested in employment a test is required. Also, on March 19, 2009, at 6:00 pm, DC37 at 125 Barclay Street is showing a moving. The Secret Life of Bees.

<u>Donations</u>:   None

Aurelia and Debbie gave Colleen the CBTU Registration Forms. Pat needs to submit her forms for CBTU for Colleen to process Debbie, Aurelia and Pat registrations forms. Colleen said we can fax our information for those who did not submit the forms at the board meeting. Aurelia is requesting the gospel show at CBTU, Colleen will arrange it, and give us copies.

Aurelia received information from members of local 372 family picnic day, (tickets are going fast). Colleen said "once she receives the information or flyer, she will address it to the board. The retiree are having a gospel fest (tickets are also Going fast). Also, Aurelia ask for clarification on PEOPLE membership, Colleen response was "yes Aurelia you are a member for PEOPLE".

Colleen is meeting with The Research Department and CUNY to address the Nine year to grieve a case and separate the CA contract from the Civil service employee's. Lobby Management Meeting 04/21/09

Number 5 was <u>tabled</u>: setting a day for E.B. meetings: appointment of executive board members at large and delegate

Colleen made a motion to adjourned the meeting at 6:45 pm, the next Board Meeting 4/07/09 at 6:00 pm motion to accept: Elba, second Aurelia, so moved.

President Signature _Colleen Finn_ ---------------------   date-- 3/17/09 ----

Secretary Signature -------------------------------------------   date------------------

# Memorandum

| **To:** | Colleen Carew-Rogers |
|---|---|
| **From:** | Mary J. O'Connell  $\mathcal{M} \mathcal{N}$ |
| **Date:** | February 9, 2009 |
| **Re:** | Amendments to Local 2054's Constitution |

The following are a list of proposed amendments to the Local 2054 Constitution. Please review and let me know if these are accurate. Thereafter I will run them by the International. Thereafter, you will be required to follow the process set forth in the Constitution to have them approved by the membership.

1. Article IV

Section 1. All employees of the City University of New York in the titles of College Assistant, Disability **Accommodation Specialist and Sign Language Interpreter**; employees of the City University of New York in non-competitive clerical/administrative, non-competitive para-professional and related non-competitive titles are eligible for membership in this local union, subject to the requirements of the Constitution of the International Union.

(I don't think you really need to change this, as the second phrase concerning non-competitive clerical/administrative, paraprofessional and related titles are already included.)

Section 3 (a) The dues of the local shall be **$12.75** for art-time workers per bi-weekly pay period.

Article V – Officers and Duties

New Section 2. There shall be two (2) Delegates at large who shall be delegates to the District Council and who shall be entitled to attend the International Convention. In the event that the membership falls below that which would permit the attendance of two delegates, then the delegate with the greatest number of votes shall attend.

Re-number Section 2, 3 and 4

c: Michael Riggio, Chris Wilgenkamp, Mickey Eberlein, Robin Roach, Steven Syk

# EXHIBIT L

# 12

## Local 2054
## New York City College Assistants

Affiliated with District Council 37, American Federation of State, County & Municipal Employees, AFL-CIO
125 Barclay Street, New York, N.Y. 10007-2179 • (212) 815-1060

*We discussed Other options at the*
*Spec. Bd. mtg. Holidays Hills, 6 Flags,*
*Dorney Park or picnic / Barbeque.*
*This letter never mentions this option*
*to the members.*

**To:** All Members of Local 2054

**From:** Colleen Carew-Rogers, President  *CCR*

**Date:** March 20, 2009

**Subj.:** NOTICE Re: SPRING BASH

Dear Members,

I was informed by some Executive Board Members, that some of you would like us to discontinue the Annual Spring Bash which is held after the General Membership Meeting. Since this has been a traditional affair, I would like to hear from you the Members if you agree or disagree.

I have informed the Executive Board Members, that the Members will vote through the mail and at this years General Membership Meeting & Spring Bash, which will be held on May 8, 2009. The final decision will be placed on the website.

Below is a response form as to how you want to vote. In addition the Local will be forming a Committee to oversee future fundraising events and family outings for the summer.    *Never discussed w/ board.*

Respectfully,

.........................................................................cut here.........................................................................

Please check your choice with an X:

Continue the Spring Bash [     ]

Discontinue the Spring Bash [     ]

Please return in the enclosed envelope.

*Not Valid Ballot.*
*Impartesl 3rd party should be*
*Counting these.*

# EXHIBIT M

# $\#\ /5^3$



Linda Bowman <linbow43@gmail.cc

# **Colleen Rogers - President L2054**

7 messages

**Linda Bowman <linbow43@gmail.com>**                         **Wed, Apr 22, 2009 at 12:10.**
To: lroberts@dc37.net
Cc: Debbie Spivey <dspivey@jjay.cuny.edu>, Aurelia Harrison <maturity1941@aol.com>, Patricia Brown
<pbrown@jjay.cuny.edu>

Dear Lillian,

I want to inform you, since our last meeting with you in March. Mrs. Rogers has become worse than before.
As Vice President of Local 2054, I cannot and will not stand silent any longer. If something isn't done soon,
we will take this to the council and then if need be, it will go to AFSCME.



We nominated Maria Rodriguez to fill a vacant position on our executive board. To date, Colleen has refused
to allow this member to come on board. She first sent a letter to Maria telling her that 2 names were
submitted and she would like to meet with her. When Colleen met with her, she had with her Maria Zayas who
is the **Grievance Rep** but **not a board member**, Elba Amadiz who is a board member.They took Ms.
Rodriguez to lunch at Gee Whiz and told her that she was nominated because we are trying to manipulate
her. They made her feel so uncomfortable. I am sure you would agree that this is unprofessional,
unacceptable,

Secondly, the Board (governing body) voted against the Spring Bash, back in February. We discussed other
options Picnic/barbeque in the summer. In March, Pat Brown was not in attendance as well as myself. The
issue was to be tabled. Letters went out to the members with ballots attached asking the members to vote on
the Spring Bash. The letter never mentioned another option, then she contradicted herself in the letter asking
the members to vote on the bash then stating a vote will be taken at the spring bash. As far as I am
concerned those ballots are not legal. An impartial party should be counting the ballots.Not Colleen. Flyers
were sent out for the Spring Bash.

Also why is Maria Zayas allowed to sit in on the executive board meeting and taking notes as if she is the
secretary and I want to reiterate that she IS **NOT A BOARD MEMBER.**

I want to add that I am still the Vice President whether Colleen likes it or not. She does not communicate with
me at all. I was wrongfully terminated as a grievance Rep but I walked away silently. I am a happier person
because I did so. However, I would like to be included in any information regarding the local. Even if by email. I
don't think it's right that she runs the local with the Grievance Rep and board member Elba. We are still part of
the board and we should all be able to have a working relationship and while we don't have to like one another
- there should be a level of respect for one another. This NEEDS to be conveyed to Colleen. In the board's
opinion she has become very arrogant.

I, along with Debra Spivey- Secretary, Patricia Brown - Treasurer, Aurelia Harrison- Board Member are
requesting another meeting with you at your soonest convenience.

Thank You in advance for your attention to this serious matter.

Respectfully,                                                                                              $M$

$\left(\# \ 1B\right)$

Wednesday, April 15, 2009

Dear Mrs. Bowman,

I am writing to inform you of a meeting I had with Mrs. Rogers (President of L2054) and
her assistant Maria Urena- Zayas and Elba Pena Amadiz which left me feeling very
uncomfortable and offended.

When I arrived at DC-37 Headquarters about 1:00pm, Colleen Rogers made small talk
about how she hadn't been feeling well, still was not feeling so great. Then she told me
we were going to Lunch. I was surprised because she told me on the phone she wanted to
meet with me to discuss the letter regarding the vacant position on the executive board. I
mentioned that my husband was downstairs waiting for me, she told me he could come. I
didn't ask any questions, I just went along. Maria Urena-Zayas (Grievance Rep)
accompanied us as well, when we arrived at Gee Whiz diner, Elba Pena Amadiz
(executive board member) was waiting for us there. Small talk ensued. Colleen
mentioned her plans for the local news letter, annual meetings with College Assistants.
Then Mrs. Amadiz told me the only reason I was nominated as an executive board
member was so that I could be easily manipulated by the rest of the board members. I
told them that the only reason I was interested in the position was to serve the College
Assistant's.

Sincerely,

*Maria B Rodriguez*

Maria B. Rodriguez

# EXHIBIT N

Spring 2009, Vol. 1, No. 1



# LOCAL 2054 NEWS

**City University of New York College Assistants, Local 2054,**
DC 37, AFSCME, AFL-CIO · 125 Barclay Street, New York, NY 10007

City University of New York
College Assistants
Local 2054
125 Barclay Street
New York, NY 10007

Phone: (212) 415-1087
Fax: (212) ... 1411
Email: ... .com
Web: ... .com
DC 37: ... .net

**Colleen Carew-Rogers**
*President*
**Linda Bowman**
*Vice President*
**Debra Spivey**
*Secretary*
**Patricia Brown-McDougald**
*Treasurer*
**Elba Pena-Amadiz**
*Executive Board Member*
**Aurelia Harrison**
*Executive Board Member*
**Maria Urena-Zayas**
*Grievance Rep*

**White Collar Division**
Michael J. Riggio
*Director*
Chris Wilgenkamp
*Assistant Director*
Keith Clarke
*Council Rep*

**District Council 37
AFSCME, AFL-CIO**
Lillian Roberts
*Executive Director*

**Local 2054 News Editorial Staff**
*Editing*
Molly Charboneau
*Layout Design*
Alyce G. Archer

**QUOTE for the Month:**

*"Being happy doesn't mean everything's perfect. It means that you've decided to see beyond the imperfections."*
— *Anon.*

## President's Message —

# Our first newsletter of the 21st Century



**Colleen Carew-Rogers**

Dear Brothers and Sisters,

Welcome to our first newsletter of the 21st Century. At last year's Annual Spring Bash, a promise was made to create a website and a newsletter. Well, I am happy to say that the website is up and running, and now we have our newsletter. There is much more to be done, and I am counting on you – the members – to get involved in your Local so we could move forward.

For the past two years, I have been holding lunch-time meetings at various campuses. Priority was given to the campuses that were without Shop Stewards. We've been successful in filling the Shop Steward position at about 80% of the sites and will continue until each campus has a representative.

There has been an ongoing problem with the processing of membership (green) cards. Members have complained that they have not been receiving meeting notices or information regarding the Union, or they are receiving the *Public Employee Press* newspaper but not the notices. I spoke to the people who are in charge of this process, and they assured me that they are trying to keep on track.

This newsletter is being sent to both members and to those who pay the Agency Shop Fee. If anyone has completed a green card to become a member, but still sees "A/S" at the bottom of their pay stub, please contact me or your Grievance Representative.

Meanwhile, be strong, be courageous, be active and be proud.

In solidarity,
**Colleen Carew-Rogers**
*President*

*The Executive Board was not included in the making of this news letter.*

# Shop Steward Workshop

We are planning a 2nd Shop Steward Workshop very soon. Unfortunately, due to the sudden serious illness of our dear friend and Shop Steward Teacher Larry Kelly, we had to postpone the workshop which was scheduled for October 2008. However, we have been informed that there is another person/s that will be carrying on the teaching. Shop Stewards will be notified about the new date.

# "Weingarten Rights"

"You have the right to demand the presence of a Union Representative whenever an agent of management summons you to an investigation which you **reasonably believe** could result in disciplinary action against you. If you are denied the opportunity to have a Union Representative present, any information obtained will be excluded from any later disciplinary hearing." **But you must demand the presence of a union representative.**

# Tuition Reimbursement



As of January 2009, the tuition reimbursement has been increased from $350 per semester or $700 per year, to $400 per semester or $800 per year. As a trustee of the DC 37 Education Trust Fund, it was a pleasure to have participated in making this decision.

To be eligible for the refund you must be employed for 17.5 hours or more per week. You must call the DC 37 Education Department at (212) 815-1700 to get the application form. Once you receive the form, it should be completed, signed and submitted along with a copy of your grade and a bursar's receipt. You must do this within 120 days from the last semester. If for any reason there is a delay in getting your grade, please submit the form with the bursar's receipt and a note informing the department of this 'hitch.' This will allow the Education Department to date stamp your form, and once you submit the grade, you will be processed as of the date stamped on your form. **Important: Grade must be C or higher.**

# Bargaining

As you are aware, our current contract ends in October 2009. We will attempt to get to the table sometime before then with the same list of demands that was previously submitted, including:
1. Holiday pay
2. Bereavement leave
3. Disciplinary review of termination, which currently is only applicable if the employee has 9 years with 500 hours on payroll for each consecutive year. We are seeking to have this reduced.

Should you – the member – feel there are additional issues and /or demands, please contact your elected union officer and/or Shop Steward at 212-815-1967.

This issue of *Local 2054 News* is dedicated to the memory of our non-stop, hard working and dedicated past President **Joan Reed**, who passed away on February 3, 2008.

# General Membership Meetings

According to our Local Constitution, we are required to have three general membership meetings a year. The first one for this year will be held May 8, 2009. At that meeting we will set the date for the second meeting. At the second meeting we will have a discussion on amending our Constitution; if we reach a consensus on amending our Constitution, those amendments will be read at the next general membership meeting along with current Constitutional language. At a subsequent meeting those amendments will again be read, printed handouts of both the old and new language will be distributed, and then a vote will be taken. This will comply with the requirements under our Local Constitution. We cannot **stress enough** the importance of attending these meetings.



# Did You Know?

**There is a Computer Usage Policy?** You are not allowed to access the web on your office computer unless it is authorized by a Supervisor, Office Manager, Director or it is part of your duties. Please know that the personnel at CUNY's mainframe station monitor all activities on workplace computers.

**There is a Zero-Tolerance-for-Workplace-Violence Policy?** Certain infractions, which may seem insignificant, fall under this policy. So be careful when responding to anyone who may say something that you may not like. If you feel threatened and are the recipient of negative remarks or verbal abuse, report but do not respond. All reports may require a witness. And most important, call us, call us, call us.

**That the $12.75 deduction from your pay is a State Law?** According to Taylor Law Section 208 (2) Article 14, of the Civil Service Law: "As the exclusive bargaining representative, the union must represent all members, union and non-union within the employee group. Since 1977, any union established as the exclusive bargaining agency for State or City employees (via certification procedures administered by the Public Employment Relations Board) is entitled to have an amount equivalent to the dues levied by such employee organization automatically deducted from the paychecks on non-union member employees (Section 208 (3), Civil Service Law." This deduction is also known as an Agency Shop Fee.

# Help Edit the Newsletter

We are looking for co-editors for our newsletter, **Local 2054 News**. Please contact Ms. Maria Ureña-Zayas at 212-815-1979 if you are interested. Also, if you have ideas for your Local and would like to see them in print, please contact Maria at the above number.



# AFSCME

## We Make America Happen

American Federation of State, County and Municipal Employees, AFL-CIO. Get the latest AFSCME news and information at www.AFSCME.org, the AFSCME home page on the World Wide Web.

# THE INS & OUTS

**Celebrate** If you have an upcoming occasion you would like us to list, please let us know.

We'd like to celebrate with you – Graduations, Weddings, Engagements, Birthdays, Honors, and Awards.

**In Memory Of** Mr. Bernard "Bernie" Syrop, who died on April 13, 2009. Bernie, as he was known, worked at Kingsborough Community College in the Registrar's Office and in other assignments as a College Assistant since 1988. He will be remembered for his unlimited energy, his kind words and his love of telling jokes. He'll be missed. Our condolences go to his family,

## Remaining Executive Board Meeting Dates for 2009:

All meetings are held at DC 37, 125 Barclay St., at Manhattan

Tuesday, May 5, 2009
Tuesday, June 9, 2009
Tuesday, September 8, 2009

Tuesday, October 13, 2009
Tuesday, November 10, 2009
Tuesday, December 8, 2009



New York, NY 10007
125 Barclay Street
DC 37, AFSCME, AFL-CIO
Local 2054 News
CUNY College Assistants

N

# EXHIBIT O

June 10, 2009

Colleen Carew-Rogers
President, Local 2054
DC-37, AFSCME

Dear President Rogers,

The Executive Board of Local 2054 is seeking to recoup all monies that the
local paid out for Maria Urena-Zayas when she attended the AFSCME
Leadership Conference in May 2009. You *told* the Executive Board that
Ms. Zayas was attending the conference towards the end of the executive
board meeting on May 5, 2009. However, you did not ask the board's
approval to cover travel, hotel and/or any other expenses the local paid out
for her. Therefore, we are requesting the receipts and credit card statement
to verify the amount of money Ms. Zayas owes Local 2054.

In Solidarity,


Linda Ann Bowman
Vice President, Local 2054
DC-37,AFSCME

Patricia McDougald
Treasurer, Local 2054
DC-37, AFSCME

Maria B. Rodriguez
Executive Board Member
DC-37, AFSCME

Debra Spivey
Secretary, Local 2054
DC-37, AFSCME

Aurelia Harrison
Executive Board Member
DC-37, AFSCME

# EXHIBIT P



**AFSCME.**
**We Make America Happen**

Gerald W. McEntee
*President*

William Lucy
*Secretary-Treasurer*

**Vice Presidents**

Ken Allen
*Portland, OR*

Henry L. Bayer
*Chicago, IL*

George Boncoraglio
*New York, NY*

Anthony Caso
*Boston, MA*

Greg Devereux
*Olympia, WA*

Danny Donohue
*Albany, NY*

David R. Fillman
*Harrisburg, PA*

Michael Fox
*Harrisburg, PA*

Albert Garrett
*Detroit, MI*

Raglan George Jr.
*New York, NY*

Sherryl Gordon
*Trenton, NJ*

Lakesha Harrison
*Oakland, CA*

Danny J. Homan
*Des Moines, IA*

Salvatore Luciano
*New Britain, CT*

John A. Lyall
*Worthington, OH*

Roberta Lynch
*Chicago, IL*

Glenard S. Middleton Sr.
*Baltimore, MD*

Veronica Montgomery-Costa
*New York, NY*

Doug Moore
*San Diego, CA*

Michael D. Murphy
*Madison, WI*

Henry Nicholas
*Philadelphia, PA*

Eddie L. Parks
*Westerville, OH*

Randy Perreira
*Honolulu, HI*

George E. Popyack
*Oakland, CA*

Greg Powell
*Austin, TX*

Laura Reyes
*San Diego, CA*

Eddie Rodriguez
*New York, NY*

Joseph P. Rugola
*Columbus, OH*

Kathy J. Sackman
*Pomona, CA*

Eliot Seide
*South St. Paul, MN*

Mary E. Sullivan
*Albany, NY*

Braulio Torres
*San Juan, PR*

David Warrick
*Indianapolis, IN*

Jeanette D. Wynn
*Tallahassee, FL*

June 22, 2009

Ms. Colleen Carew-Rogers, President
AFSCME New York Local 2054
125 Barclay Street, Room 406
New York, NY 10007

Dear Sister Carew-Rogers:

Enclosed is a draft report summarizing the findings made by our International Auditors as a result of their visit to New York Local 2054. The purpose of the report is to guide Local 2054's financial decision makers and executive board in changing and/or instituting policies and procedures that will aid the Local in avoiding financial difficulties.

We are providing you with a draft in order to allow you an opportunity to review the findings and inform me of any changes that you feel should be made to the report before the final version is issued. After reviewing the enclosed draft report, please respond to me, in writing, with either details or justification for changes or a statement accepting issuance of the final report without change.

If we do not receive a response from you within thirty days, we will issue a final report identical to the draft.

In solidarity,

Thomas Kulikosky, CIA, CPA
Assistant Director, Auditing

Encl.

TK: wd

𝒫

## American Federation of State, County and Municipal Employees, AFL-CIO
## Financial Services – Auditing Department
## AFSCME Affiliate Audit and Review Program
## New York Local 2054 – DRAFT

June 22, 2009

A review was made at AFSCME New York Local 2054 in March 2009. This review, part of AFSCME's Affiliate Audit and Review Program, is not intended to replace the need for annual audits by a Certified Public Accountant. This review generally covered January 2007 through December 2008. The time period scope was extended in some areas where considered necessary.

Recommendations from this review are based on a review of policies, minutes, financial statements, and a sample testing of the local's accounting records. Our suggestions are intended to assist in updating and improving internal controls and the general fiscal administration of the local.

The review of Local 2054 revealed the following accounting and related administrative practices that depart from AFSCME's Financial Standards Code or generally accepted business practices. Areas of concern discussed below include:

- Credit Cards
- Decrease in Value of Investments
- Financial Reports
- Dues Deductions
- Reimbursed Expenses Recordkeeping
- Officer and Steward Stipends

### Credit Cards

The local currently has one Union Plus Travel MasterCard, which is being used by Colleen Carew-Rogers, President. During the period reviewed, cards were also being used by Linda Bowman, Vice President and the local's previous President, Joan Reed. Total credit card payments for 2007 through 2008 were $38,804.68.

The local has no written credit card procedures. We were informed that the local's practice is to prohibit personal charges on the credit cards. Charges are not reported on expense reports and the supporting documentation for charges was unorganized and some receipts were missing. Although the nature of the charges appeared to be union related, the business purpose of charges was generally not indicated in the union's records.

#### *Credit Cards – Recommendations*

The current officers of Local 2054 who have made credit card charges should provide the local with a complete accounting of all credit card charges paid to date. Any charges that are not properly documented as to union business purpose should be reimbursed to the union.

Local 2054 should implement policies and procedures, such as the following, to improve accounting controls over the use of union owned credit cards:

o  The local should consider discontinuing the use of its credit cards. The AFSCME Financial Standards Code recommends that, in lieu of using a union-owned card, AFSCME affiliates should institute procedures that allow for prompt reimbursement of individuals' expenses. Where such procedures exist, individuals can use their personal cards and be reimbursed in a timely manner, thus eliminating the need for a union credit card.

o  If the local decides to continue to use the union credit card, it should implement policies that state the types of costs that can be charged on the credit card, as well as other policies that govern use of the card.

o  The union's records should contain adequate documentation to demonstrate the business purpose of any charge, including travel charges made on the union's credit card. This documentation should be sufficient to stand alone without additional explanations.

o  Any person responsible for making a charge on the union owned credit card must provide an accounting of that charge to the union on an expense report or other form intended for that purpose. All supporting receipts should be attached to the expense report.

o  All reported charges must be documented by an itemized invoice and explained as to the union purpose.

o  Any entertainment charged to the union's credit card must list the names of the people entertained, their relationship to the union, and the business purpose of the entertainment.

o  Upon receipt of the credit card statement, the charges on the statement must be reconciled to expense reports and receipts. Any unsupported charge must be investigated. Charges that cannot be documented as union business should be reimbursed by the cardholder incurring the charge.

## Decrease in Value of Investments

The value of the Local's investments has decreased substantially during the period of our review. The balance of the Smith Barney investment account was $1,801,286 as of December 31, 2007 but was reduced to $743,418.18 as of February 27, 2009.

### Decrease in Value of Investments – Recommendations

Article II, Section 3 of the AFSCME Financial Standards Code provides guidelines for union investments. The Code requires the local investments to be made in the safest types of instruments. It also states that investments in instruments which have the potential for loss of principal (such as stocks) should be avoided. The Local should review these guidelines in the Financial Standards Code and take the necessary steps to ensure its compliance with provisions regarding investments.

## Financial Reports

Our review identified the following issues regarding the local's financial reports:

- The local's CPA audit report indicates operating deficits of $281,115 in 2007 and $15,505 in 2006.
- The local does not have a current budget and has not submitted an annual budget to the International since 2004.
- The local's monthly financial reports presented to the board need improvement.
    - Monthly financial reports are not prepared for all executive board and general membership meetings
    - The reports are not prepared on a timely basis
    - The reports do not compare actual to budget.
- The local does not submit its financial reports to the International in a timely manner. As of the dates of our on-site visit, the most recent quarterly financial report available for review was for the quarter ending September 30, 2008.

### *Financial Reporting – Recommendations*

- o Although the local has sufficient assets to sustain operating deficits in the short term, the local should monitor its activities and take steps to ensure that operating deficits do not deplete net assets to an unacceptable level.
- o The local should draft and approve an annual budget prior to the start of each year. A copy of the budget should be provided to the International Auditing Department as soon as it is approved
- o The Treasurer's reports should be improved and prepared on a timely basis. An income statement showing budgeted versus actual income and expenses for the month and year to date and a balance sheet should be presented at each regular executive board and general membership meeting as required by Article IX, Section 4 of the AFSCME Financial Standards Code. The approval of the monthly financial reports should be documented in the meeting's minutes.
- o At the end of each quarter, the local should submit its financial report to the International as soon as it has been approved by the board.

## Dues Deductions

Article IX, Section 8 of the International Constitution sets the criteria for the payment of less than full time dues. Our review indicated that the dues for Local 2054 College Assistants may have been deducted and per capita taxes paid to both the council and the International Union at the part-time rate for some members who may be working regular schedules in excess of 20 hours per week. It is our understanding that the city's job classification codes are used in determining the dues deduction rate as opposed to using actual hours worked. This may result in under collection of dues and underpayment of per capita tax to both District Council 37 and the International.

*Dues Deductions – Recommendations*

The local should work with Council 37 to determine if adjustments are necessary within the council's systems or with the city to ensure that dues are properly collected and per capita tax is paid in accordance with the International Constitution.

## Reimbursed Expenses Recordkeeping

The amount of reimbursements to officers is small, because the local uses a credit card for travel expenses. The Local, however does not use an expense report to support reimbursed expenses.

### *Recordkeeping – Recommendations*

All reimbursements to officers and members should be supported by an expense report, with attached receipts and an explanation of the union business purpose.

## Officer and Steward Stipends

The Local's records do not contain documentation of approval for its monthly officer and steward stipends. These stipends have been in effect for many years and the amounts have not been changed in several years.

### *Officer Stipends – Recommendations*

The amounts of officer and steward stipends should be presented to the board, preferably on an annual basis and documentation of the approved amounts should be maintained in the union's records.

# **EXHIBIT Q**

LOCAL  2054  AFSCME

**Statement of Revenue and Expenses**
**For the Month  of May  2009.**

REVENUE:

| | |
|---|---:|
| Gross dues-Dues checkoff | $   140,416 |
| Less: Per capita allocations: | |
| District Council 37 | 95,234 |
| AFSCME International | 49,401 |
| Help Our Own Fund | 1,372 |
| Municipal Labor Committee | 223 |
| Admin. Check-off charges | 168 |
| Total deductions | 146,398 |
| | |
| Net dues | (5,982) |
| Interest and Dividends | 3.534 |
| Other receipts | 175 |
| TOTAL REVENUE | (2,273) |

EXPENSES:

| | |
|---|---:|
| Executive board stipends | 3,453 |
| Meetings | 35 |
| Contributions, participations and journal advertisements | 250 |
| Payroll taxes | 560 |
| Travel, and parking | 808 |
| Conferences and conventions | 8,710 |
| Telecommunications | 233 |
| Postage. printing and office | 92 |
| Dues refunds | 1,105 |
| Retirees dues | 72 |
| Interest & bank charges | 15 |
| Spring bash | 14,653 . |
| TOTAL EXPENSES | 29,986 |
| | |
| Excess of expenses over revenue | $   (32.259) |

ASSETS

BANK BALANCES :

| | |
|---|---:|
| Checking account | $    10,943 |
| Savings (Political Action A\C) | 574 |
| INVESTMENTS (Market value) | 1,060,255 |
| OFFICE FURNITURE AND EQUIPMENT | 1,277 |
| | |
| TOTAL ASSETS & UNRESTRICTED NET ASSETS. | $ 1,073,049 |



# EXHIBIT R

Linda Ann Bowman
Vice President Local 2054
DC-37, AF5CME

John Serfarian
AFSCME
1625 L Street N.W.
Washington, D.C. 20036

Dear Mr. Serfarian,

The Executive Board of Local 2054, DC37, AFSCME is requesting a review to bring charges against
President Colleen Carew-Rogers for violations of the Constitution.

• Article VII sections 6A and 6C

The Executive Board voted against having an event, the Spring Bash, on May 8, 2009. Although
the Board suggested options, President Rogers said it is her decision to go on past practice.
There is no such "past practice" clause in our constitution. Expenses concerning the Spring Bash
were not brought before the board. We approved tickets for specific events (concerts, dances,
etc.) to be raffled off, so I was very surprised when a member told me she won a gift card for
A&P Supermarkets in the amount of $25.00. She also said she doesn't have an A&P in Brooklyn
or Queens. Evidently, President Rogers purchased gift cards without the board's knowledge.

President Rogers told the all who showed up at the Spring Bash that "half the Board did not
approve gifts" for them, which was not at all true. We did not give approval to the sample bags
President Rogers showed us, therefore, gifts were tabled until the April 2009 Executive Board
meeting. For more than two years, tickets, furniture, office supplies and a microwave oven
have been procured and brought to the board only after the purchases had been made.

President Rogers invited Grievance Representative Maria Urena-Zayas to the AFSCME
convention in Washington D.C. the week of May 11, 2009. This was not brought to the table at
the May 5th Executive Board Meeting for approval, nor would the Board have approved it.

President Rogers had a newsletter created in which the executive board did not have any role
in. We were never asked for our input/suggestions. President Rogers mentioned that she was
working on a newsletter and then presented it to the board after it was mailed out to the
members. (See document #14, #15, newsletter attached).

• Article VIII section 5

The Constitution for Local 2054 states in order for eligibility for office in the local union, one
must be a member in good standing for one (1) year. In October 2008, at a meeting at Bronx
Community College, the shop steward (whom President Rogers appointed, Celia Bracy) was a
member for less than one (1) year. When the matter was brought to President Rogers' attention

by Council Rep Mickey Eberlein, President Rogers asked to speak with Ms. Bracy privately. I heard President Rogers inquire of Ms. Bracy, "I assumed you were a member for one (1) year", and Ms. Bracy shook her head "no". When President Rogers asked Ms. Bracy when she would be there for one (1) full year, Ms. Bracy said "in a couple of months." President Rogers replied "you'll be the shop steward, but we won't post it on the website until you've reached one (1) year. I didn't mention anything because at that time I was still intimidated by her.

*   Article VIII Section 9

    In September 2008, the Executive Board nominated Linda Ann Bowman, Treasurer as Vice President –President Rogers stated that the board could not nominate an officer. She also added that since I am the treasurer I could not switch titles. I explained to the board that I was not comfortable with the fact that I had received a call from a Tom Conte, Auditor of AFSCME he informed me that our local had red flags. Also, I had no control whatsoever over the check book, and was in the dark on purchases. I opted to resign as the Treasurer. When we tried to show her our constitution she said she had to go because her husband was waiting outside. She abruptly adjourned the meeting. The Board approached Mike Riggio, White Collar Division Director, and explained what had happened. Mr. Riggio asked to see the Constitution. After reading it, he explained that the executive board has the power to fill a vacancy. The executive Board called a special meeting to elect Linda Bowman as Vice President. President Rogers called a shop steward from College of Staten Island, Maria Rodriguez, to tell her that Linda stabbed her in the back. President Rogers also demanded Mrs. Rodriguez tell her about any and all conversations she and Linda had in the car service ride home from the September 2008 Executive Board meeting. Mrs. Rodriguez said she did not want to get involved in gossip.

    Recently, we nominated Maria Rodriguez (shop steward from College of Staten Island) as an executive board member. President Rogers has continually dragged her feet regarding our efforts to get Ms. Rodriguez elected. President Rogers asked board member Elba Pena-Amadiz if there was another candidate she would like to nominate. Elba nominated Ms. Maisonette from BMCC. President Rogers then mailed letters to the nominees, requesting a meeting. (See document 14, and 15- 2nd paragraph).

    The executive Board assumed President Rogers would meet alone with each candidate to verify qualifications and generally evaluate their potential. What instead occurred, President Rogers met with the candidates, not alone, but with Board Member Elba and Grievance Representative Maria Urena-Zayas **(not an executive board member).**

We have met with Executive Director Lillian Roberts on two separate occasions, neither of which resulted in President Rogers changing her method of treating the board as her sovereign empire. (document #s' 3,4,8,9,11,12,13,16,17)

Although Ms. Roberts' body language clearly exhibited her displeasure with the accusations against President Rogers, Ms. Roberts did not reprimand President Rogers. Ms. Roberts simply recommended

that the Executive Board and President Rogers "forget the past and move forward". This might well have worked with an individual capable of change and progress, but President Rogers has proven herself repeatedly to be incapable of change, progress, and professionalism.

In February 2009, I was terminated as a Grievance Rep by President Rogers. She falsely accused me of being verbally abusive and crying like a child. (See document # 6, #10) none of which was true. Executive Director Lillian Roberts never afforded me the opportunity to state my case or hear my side. She allowed Mrs. Carew-Rogers to terminate me. This action was unjust and flies in the face of the "AFSCME for Justice" Logo.

I have enclosed an email from President Rogers dated August 2008. The email clearly indicates President Rogers' intention to bring Maria Urena-Zayas on board as Vice President. I feel this alone is evidence to support my claim that President Rogers planned in advance to terminate me. (document #4)

Also attached are Minutes from January 10, 2007 through April 7, 2009

I understand this is a lot to read but I urge you to read thoroughly, emails and memo's, letters. We have tried to work with President Rogers for the past 2 years and she is not approachable. She dictates to the Executive board. We have spoken with Executive Director Lillian Roberts to no avail. President Rogers behavior has not changed, she has only become more arrogant.

We need action to be taken quickly. We're prepared to go to the newspapers and the media if need be.

You may contact me at 718-494-6530  or 917-741-0616

My email address is linbow43@gmail.com

Respectfully submitted by:
Linda Ann Bowman
Vice President Local 2054,DC-37 AFSCME

Cc:
Gerald McEntee
President, AFSCME

Bill Lucy
Secretary- Treasurer
AFSCME

Lee Saunders
Administrator of DC-37

Lillian Roberts
Executive Director
DC-37, AFSCME



**We Make America Happen**

Gerald W. McEntee

William Lucy
*Secretary-Treasurer*

John Seferian
*Chairperson, Judicial Panel*

*Judicial Panel Members*

Richard Abelson
*Milwaukee, WI*

Kahim Boles
*Philadelphia, PA*

Carol Dodlich
*Spanaway, WA*

Richard Gollin
*Jersey City, NJ*

Dayton Nakanelua
*Honolulu, HI*

Gloria Plowell
*Nashua, NH*

Nancy J Swindell
*Acampo, CA*

Jim Tucciarelli
*Staten Is., NY*

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

August 17, 2009

Linda Ann Bowman                    Colleen Carew-Rogers
Vice President, Local 2054          President, Local 2054
761 Manor Road, Apt 3E             4211 Avenue K, Apt 2K
Staten Island NY 10314             Brooklyn NY 11210

**Re: JUDICIAL PANEL CASE NO. 09-49**
**Bowman et al. v. Carey-Rogers**

GREETINGS:

Enclosed is decision in the above-captioned case.

In Solidarity,

John Seferian
Judicial Panel Chairperson

JS:ahh

cc:     Gerald W. McEntee, International President
        William Lucy, International Secretary-Treasurer
        Mike Sukal, Regional Director, O&FS
        Lillian Roberts, Executive Director, DC 37
        Debra Spivey, Secretary, Local 2054 (charging party)
        Patricia McDougald, Treasurer, Local 2054 (charging party)
        Aurelia Harrison, EBM, Local 2054 (charging party)
        James Cullen, AFSD

## JUDICIAL PANEL CASE NO. 09-49
### Bowman et al. v. Carew-Rogers

This matter concerns charges filed by AFSCME Local 2054 Executive Board members Linda Ann Bowman, Patricia McDougald, Aurelia Harrison and Debra Spivey, against Local 2054 President Colleen Carew-Rogers. AFSCME Local 2054, New York City College Assistants, is affiliated with New York DC 37.

On June 8, 2009, the Judicial Panel assumed original jurisdiction over the charges in accordance with Articles X and XI of the International Constitution.

The case was assigned to Judicial Panel Chairperson John Seferian after the parties were given an opportunity to strike names from a list of panel members, pursuant to Article XI, Section 8, of the International Constitution. Following due notice to all interested parties, the trial was held on July 8, 2009 in New York City. All testimony was given under oath, and a complete transcript of the proceedings was made by a professional court reporter.

### THE CHARGES
(See attached)

### THE PARTIES

The charging parties were present and represented by Sister Bowman. The accused party was present and represented herself.

### EVIDENCE IN SUPPORT OF THE CHARGES

All the charges other than charge 1 were dismissed prior to the hearing as non-chargeable offenses.

CP 1 was placed into the record, a composite exhibit consisting of executive board meeting minutes, copies of correspondence to members of the local, executive board meeting agendas and treasurer's reports for 2008 and 2009.

Sister Debra Spivey, secretary of the local, referred to the April 7, 2009 executive board meeting minutes, part of CP 1. Under old business, Sister Spivey, who took these minutes, noted that the minutes state "the board voted against the gifts and spring bash." She testified that the spring bash was held regardless and in addition, there were gift cards distributed to the members. When Sister Spivey asked Sister Rogers about the gift cards she responded, "It was a donation. It had nothing to do with the local's money."

Upon cross-examination, Sister Spivey stated that there was not a formal motion adopted at the April executive board meeting to "stop the spring bash;" however, there were discussions over several executive board meetings at which members of the executive board expressed their feelings that there should not be a spring bash.

Upon questioning by the undersigned, Sister Spivey stated that the spring bash was financed by local funds; however, there was no prior approval by the board for financing of the spring bash. She stated that it appears the gift cards were donated and that no local funds were used.

Aurelia Harrison, executive board member, testified that the board had various discussions at meetings concerning the spring bash "and we suggested that the bash be tabled because we wanted to have something in place of the spring bash." Sister Harrison stated that members of the local subsequently received a memo from Sister

Rogers containing a ballot as to whether or not to hold the spring bash. She stated that this "ballot" was sent out without executive board approval or knowledge.

Upon cross-examination, Sister Harrison testified that it was the past practice of the local to hold a spring bash.

Upon questioning by the undersigned, Sister Harrison testified that at the March executive board meeting there was a vote "to table" the spring bash and to have the full executive board deal with the issue at their next meeting. On March 20 however, Sister Rogers sent out the ballot to the members. On April 20 she stated that members voted to proceed with the spring bash, reporting that the vote was 88 in favor and 51 opposed.

Patricia McDougald, treasurer of the local, testified that at the April 7 executive board meeting when Sister Rogers announced the membership vote in favor of holding the spring bash, she attempted to give Sister Rogers a list of members' names at John Jay College who did not receive the ballot; however, Sister Rogers stated that she "didn't want to see it right then."

Upon cross-examination, Sister McDougald stated that in addition to giving Sister Rogers a list of members who did not receive a ballot, she also gave her a petition from members at John Jay College who were not in favor of holding the spring bash.

Upon questioning by the undersigned, Sister McDougald testified that she received the expenses for the spring bash from Sister Rogers and "I signed for payment." She testified that every expense for the spring bash "was in one package."

Sister Bowman testified that while the executive board did not agree to hold the spring bash they decided to proceed in any event because "members ... were looking forward to it." She testified,

> Since the card already went out to the members they were looking forward to it, whoever did want to go. We weren't sure of the amount since we had never saw the ballots ... basically the decision was made. And we just kind of went along with it because we felt it was too late at that point to change, you know, the date. (TR 56, 57)

Upon cross-examination, Sister Bowman testified that in the past the spring bash date was picked at an executive board meeting, usually early April. In her opinion, the executive board should have discussed the general expenditures for the spring bash; however, in this instance "the executive board was out of the decision making."

Upon questioning by the undersigned, Sister Bowman stated that the executive board did not know that Sister Rogers was going to send the ballot out asking the membership to vote on the spring bash. On the evening of the spring bash a membership meeting was held preceding the event and at that meeting Sister Rogers also asked the membership if they had received a ballot and "everyone was quiet."

With respect to charge 2 concerning Sister Maria Urena-Zayas attending the Legislative Conference in Washington, D.C., during the week of May 11, 2009, Sister Spivey testified that there was no board approval for Sister Zayas to attend the conference. Sister Spivey testified, "Her (Sister Rogers) response was that it was not up to the board to decide if Maria can attend the conference or not. She said as long as she made the decision she can go." (TR 66)

Upon cross-examination, Sister Spivey stated that Sister Zayas is a member of the local and assists Sister Rogers.

Upon questioning by the undersigned, Sister Spivey said that there was not a motion passed to pay for Sister Zayas' expenses and "I don't know who paid for it." She stated that it was her belief that only board members were allowed to attend the conference. At the board meeting preceding the conference, Sister Rogers asked who wished to attend and she along with Sisters Rogers and McDougald volunteered to attend. All the expenses were paid for by the local.

Upon questioning by the undersigned, CP 2 was placed into the record, an extract of the check register of the local for May 2009. The same reflects that the local paid $1,640.33 to Sister Zayas to attend the conference for five nights; the same amount was paid for Sisters Rogers, Spivey and McDougald.

CP 3 was placed into the record, a June 10, 2009 letter from the charging parties to Sister Rogers asking to "recoup all monies that the local paid for Sister Zayas to attend the AFSCME Leadership Conference" inasmuch as the board did not approve her expenses to attend the conference.

Upon cross-examination, Sister Spivey testified that at the end of the April 7 executive board meeting Sister Rogers announced that Sister Zayas would be attending the conference. At the May executive board meeting it was noted that the board did not approve the expenses for her to attend the conference.

As to charge 3, concerning the dissemination of the local newsletter, Sister Aurelia Harrison testified that there was no input from the executive board concerning

the content of the newsletter. The newsletter was presented to the executive board by Sister Rogers who stated "This was the newsletter."

Upon cross-examination, Sister Harrison testified that Sister Rogers discussed the need for a newsletter to the executive board and stated that she wanted "to get the newsletter going." Sister Rogers however never asked the board for assistance nor did any member of the board volunteer to help with the newsletter.

Upon questioning by the undersigned, Sister Harrison testified that the executive board never approved a motion to produce a newsletter and the board saw the newsletter only after it had already been disseminated to the membership. The newsletter is paid for with local funds.

## EVIDENCE IN REFUTATION OF THE CHARGES

Sister Elba Bena-Amabiz testified that at the April executive board meeting the question of whether or not a spring bash should be held was raised and "I said we should continue and do it for this year and let the members decide if we want to continue with the spring bash."

Upon cross-examination, Sister Amabiz testified the board mentioned alternatives to the spring bash format.

Sister Zayas identified AP 1, a composite exhibit of various correspondence, minutes, documents, etc. Included in AP 1 are the results of the vote for the spring bash, sign-in sheets for the membership meeting preceding the spring bash and a statement from Sister Rogers concerning the charges.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Relative to the first charge, it is apparent that historically the local has held a spring bash in early April; however, this year there was opposition from the executive board with suggestions that another type of event be held. Despite the board's objection the spring bash went forward as scheduled. The January executive board meeting minutes reflect the executive board's desire to hold a different type of event and that Sister Rogers would "write the members to vote on what the members are interested in." At the March executive board meeting the issue of the spring bash was once again addressed. Sister Rogers again took the position that the members make the ultimate decision. The minutes reflect, and there was testimony at the hearing, that the board voted two to two as to whether or not to proceed with the spring bash. The minutes reflect that the issue was then tabled with Sister Rogers stating that she would notify the members. Subsequently, Sister Rogers sent a memo containing a ballot to the members asking their vote on whether to hold a spring bash on May 8. At the April executive board meeting, Sister Rogers reported that the vote was to go forward with the spring bash. Subsequently, the expenses for the event were approved and paid for by the local. The ultimate decision making body in the local is the general membership. It is apparent that the membership approved the holding of the spring bash and there was testimony that the charging parties felt that it was a fait accompli and the event was held. While conducting a vote of the membership on an issue of expenditure of local funds by mail ballot is dubious, the undersigned does not find that Sister Rogers violated Article VII, Section 6, A or C, of the local constitution in proceeding with the

spring bash, which followed a vote of the membership to hold same. She is found not guilty of this allegation.

As to the issue of Sister Zayas attending the conference and the promulgating of a newsletter, it is undisputed that, in both instances, there was no prior approval of the executive board for the expenditure of the funds. Sister Rogers did not have the authority to unilaterally announce to the executive board that Sister Zayas was attending the conference without board approval. Similarly, once again Sister Rogers can not unilaterally make a decision to promulgate a newsletter without executive board and membership approval inasmuch as union funds are required to pay for the newsletter. It was undisputed that in both instances, executive board approval was not forthcoming. Sister Rogers is, therefore, found guilty of violating Article X, Section 2A, of the International Constitution and Article VII, Section 6A, of the local constitution. It is noted that the executive board did pay for Sister Zayas' attendance at the conference, which they could have voted not to approve.

## DECISION

Sister Colleen Carew-Rogers is found guilty of violating Article X, Section 2A, of the International Constitution in that she violated Article VII, Section 6A, of the local constitution. Sister Rogers is issued a formal reprimand accompanied by a formal warning against repetition of the acts for which she has been found guilty.

August 17, 2009                                    John Seferian
Washington, DC                                     Judicial Panel Chairperson
                                                   AFSCME, AFL-CIO

# EXHIBIT S

**Local 2054**
**New York City College Assistants**
Affiliated with District Council 37, American Federation of State, County & Municipal Employees, AFL-CIO
125 Barclay Street, New York, N.Y. 10007-2179 • (212) 815-1060

August 31, 2009

Colleen Carew-Rogers
President
Local 2054
4211 Avenue K, Apartment 2K
Brooklyn, New York  11210

## NOTICE AND CHARGES UNDER
## ARTICLE IX SECTION 43 OF
## THE AFSCME CONSTITUTION

Dear Sister Carew-Rogers:

A majority of the Local 2054 Executive Board, below signed, has voted to suspend you from office because you have engaged in conduct imminently dangerous to the welfare of Local 2054 and because your continuance in office threatens to do serious harm to Local 2054.

The reason we have taken this action is as follows:

1.    Lack of Democracy

a.    No Membership Meetings.  The Constitution of Local 2054 requires three (3) membership meetings per year.  Since taking office in March 2007, you have only scheduled one membership meeting, in June 2009.  This only magnifies the lack of democratic underpinnings to our local; in December 2006, you were elected Vice President of Local 2054 at a nomination-election meeting attended by eight people.  Our local has over 5,000 members.

b.    Lack of Consultation of the Executive Board.  Even though the Local 2054 Constitution requires the Executive Board to authorize all expenditures, you spend money and commit the local to debts and treat the Executive Board as an afterthought.  Despite the lack of membership meetings, you rarely if ever consult the Executive Board on questions of major policy.  See Article VII, Section 6(A), (B), and (C) of the Local 2054 Constitution.

Colleen Carew-Rogers
August 31, 2009
Page 2


          c.     In February 2009, Linda Bowman was terminated by you as the Local's sole Grievance Rep. This Grievance Rep position is the equivalent of the chief shop steward. Upon Sister Bowman's removal, you appointed a new Grievance Rep without approval of the Executive Board, a violation of Article VII Section I.

          d.     Despite numerous complaints about missing books and records, and late or nonexistent financial reports, and warnings from DC 37's auditor and AFSCME's auditor that the Local's books and records were a shambles, you have refused to allow the Executive Board to hire a CPA to conduct a proper audit.

          e.     After Board members brought you up on charges due to financial malpractice, you have threatened Board members despite having been found guilty of the charges.

          f.     Given your lack of concern for democracy, it is unlikely that you will conduct a fair election during 2009, as required by our constitution.

    2.     Financial Malpractice. In general, you have rarely, if ever, sought the Board's approval in advance of making expenditures. Both Joe Manfri, from DC 37, and Tom Conte, from ACSCME, have warned the Local 2054 Board that the books and records are full of "red flags." Among your improper acts are the following:

          a.     You paid a stipend to Maria Urena-Zayas of over $1,640 to attend a legislative conference without Board approval.

          b.     You published and mailed out a newsletter without Board approval.

          c.     In around March 2007, you bought a $42,000 Cadillac for your predecessor, Joan Reed, without approval of such an expenditure from the Board. ON the advice of DC 37 auditor Joe Manfri, you have the minutes of February 2007 amended to show the approval of a gift without mentioning the sum involved.

          d.     After Joan Reed's retirement, without Board approval, you threw her a $30,000 retirement party. In addition, you sold tickets to the event, but receipts were never noted on Local 2054's books.

          e.     Upon the retirement of the Local's Treasurer and Secretary, each, without Board approval, was given $5,000 gifts.

Case 1:09-cv-07751-GBD   Document 1   Filed 09/08/09   Page 93 of 98

       f.      In December 2008, without Board approval, you took approximately twelve members of your family to Radio City Music Hall at the union's expense.

       g.      During 2008 you gave a $300 check to Board member Elba-Amadiz, upon the passing of her mother, without Board approval.

       h.      You have purchased furniture and equipment (including a microwave) for the Local's office without Board approval.

       i.      You have saddled the Local with a "bookkeeper" who loses records, does not produce reports for the Local, and makes no reports to the Board about financial improprieties.

It is our belief that an examination of union books and records after your suspension will reveal many more financial improprieties. To the extent that the union's records are not in the union office, we direct you to bring them there no later than September 2, 2009, at noon.

Please note by that this letter, we also ask DC 37 Executive Director Lillian Roberts to revoke your release time pending resolution of the charges.

These charges also constitute a complaint under Article X Sections 2(A) and (B) of the ACSCME Constitution. We will notify you of your trial date before the Board.

                    In solidarity,

Linda Bowman
Vice President

Patricia McDougal
Treasurer

Debra Sprivey
Secretary

Maria Rodriguez
Board Member

Aurelia Harrison
Board Member

# EXHIBIT T



**Local 2054**
**New York City College Assistants**
Affiliated with District Council 37, American Federation of State, County & Municipal Employees, AFL-CIO
125 Barclay Street, New York, N.Y. 10007-2179 • (212) 815-1060

## RESOLUTION OF
## THE EXECUTIVE BOARD

Having suspended Sister Colleen Carew-Rogers from the Presidency of Local 2054, the Executive Board resolves as follows:

1.    Carlton Berkley is named as Acting President of Local 2054 and shall serve until the allegations against Sister Carew-Rogers are resolved or a new election is held, whichever is earlier.  As Acting President, Brother Berkley shall have authority to name an Election Committee.

2.    The law firm of Schwartz, Licthen & Bright, P.C. is retained as counsel to the Local at a rate of $245 per hour and is given full authority to take appropriate action to enforce the Board's actions and to recover the union's records and assets.

3.    A copy of the letter removing Sister Carew-Rogers from office shall be mailed to the entire membership of Local 2054.

4.    The Election Committee is directed to conduct the Local Election under the following guidelines:  Nominations shall be made at a membership meeting held no later than October 15, 2009; balloting shall be by mail, with ballots mailed no later than November 1, 2009; the ballots shall be returned and counted no later than December 7, 2009; the balloting shall be conducted by the American Arbitration Association.

5.     The ~~Amalgamated~~ Bank and all other banks where Local 2054 does banking are directed to remove Colleen Carew-Rogers' authority over any accounts, and Carlton Berkley is given authority to sign or countersign checks on behalf of the Local as long as he does so in accordance with the Local 2054 Constitution.

Approved:     September 1, 2009


_____
Linda Bowman
Vice President


_____
Debra Sprivey
Secretary


_____
Aurelia Harrison
Board Member


_____
Patricia McDougal
Treasurer


_____
Maria Rodriguez
Board Member

2

# EXHIBIT U

# SCHWARTZ, LICHTEN & BRIGHT, PC
## Attorneys at Law

275 Seventh Avenue, 17th Floor
New York, New York 10001
tel: 212 228 6320
fax: 212 358 1353

**Arthur Z. Schwartz`**
**Stuart Lichten**
**Daniel R. Bright**
`*Also admitted in Pennsylvania`

September 2, 2009

By Fax (202-833-0349)
and First Class Mail

Gerald McEntee
President
American Federation of State, County
  and Municipal Employees, AFL-CIO
1625 L Street, N.W.
Washington, D.C.  20036-5687

> Re:    Local 2054, DC 37
>        Suspension Imposed under
>        Section 48 of the ACSCME Constitution

Dear President McEntee:

Our firm has been retained by the Executive Board of Local 2054, DC 37.

That Executive Board has suspended the Local's President, Colleen Carew-Rogers, under Article IX Section 48 of the AFSCME Constitution.  A copy of their letter, which states the charges, is annexed.

We assume that you will appoint someone to investigate the allegations.  Please have that individual contact me at 917-923-8136, and I will arrange the necessary interviews.

Thank you for your consideration.

Please not that the Board named Carlton Berkley as Acting President.

Sincerely,

Arthur Z. Schwartz

AZS:dr
Attachment

cc:    Carlton Berkley
       Executive Board of Local 2054